Elizabeth KRISHNAN, M.D., Appellant,

v.

Senovio RAMIREZ, Jr., Temporary Guardian of Property of Humberto Sepulveda, III, as Heir of Olga Ramirez Sepulveda, Deceased, Appellee.

No. 13–99–136–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 22, 2001.

Rehearing Overruled April 12, 2001.

Craig S. Smith, Donald B. Edwards, Smith & Edwards, Corpus Christi, for Appellant.

Preston Henrichson, Law Offices of Preston Henrichson, Edinburg, for Appellee.

Before: Justices HINOJOSA, RODRIGUEZ, and CHAVEZ.[1]

1. Senior Justice Melchor Chavez assigned to this Court by the Chief Justice of the Supreme

## OPINION

RODRIGUEZ, Justice.

Appellant, Dr. Elizabeth G. Krishnan, appeals from a judgment entered against her in this medical malpractice suit. The jury awarded $250,000.00 for mental anguish damages. Appellant raises eleven issues. We affirm.

Humberto Sepulveda, Jr. and Olga Sepulveda filed suit against appellant for mental anguish damages arising from appellant's supervision and treatment of Mrs. Sepulveda during her pregnancy, which allegedly resulted in the stillbirth of their child. They alleged appellant was negligent in failing to exercise the care of an ordinary prudent obstetrician, specifically, in failing to, *inter alia,* diagnose and promptly treat Mrs. Sepulveda's condition of preeclampsia.[2] The Sepulvedas also alleged appellant's negligence caused the death of the fetus as a part of the body of the mother, and caused Mrs. Sepulveda to suffer mental anguish.

During the pendency of the litigation, Mrs. Sepulveda died. Mr. Sepulveda filed a disclaimer, renunciation and assignment of any interest in his wife's cause of action in favor of her sole surviving minor child, Humberto Sepulveda, III. The case was prosecuted by appellee, Senovio Ramirez, Jr., temporary guardian of the estate and the next friend of the minor child.

Appellant bases her appeal on the following issues: (1) the evidence was insufficient to establish causation; (2) the Sepulvedas denied appellant access to evidence that could have conclusively exonerated her by refusing her request to perform an autopsy; (3) the evidence was insufficient to establish a breach of the standard of care; (4) the evidence was insufficient to support the $250,000 mental anguish damage award, or alternately the award was excessive; (5) the trial court improperly admitted prejudicial evidence of familial attachment over her objection; (6) charge error in the damage instruction; (7) appellee misstated the controlling law regarding damages in her closing argument; (8) appellee failed to prove standing before submitting the case to the jury; (9) the suit was not brought in Ramirez's capacity as assignee, only as "heir," entitling appellee to only two-thirds of the amount awarded the decedent; (10) the trial court erred in reading back testimony without a request from the jury as required by rule of civil procedure 287; and (11) cumulative error prejudiced appellant.

By her first three issues, appellant challenges the legal and factual sufficiency of the evidence. In addressing legal sufficiency, we must consider all of the record evidence in a light most favorable to the party in whose favor the verdict has been rendered, and indulge every reasonable inference deducible from the evidence in that party's favor. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998); *Hines v. Comm'n for Lawyer Discipline,* 28 S.W.3d 697, 701 (Tex.App.—Corpus Christi, no pet.).

In reviewing factual sufficiency issues challenging a jury verdict, we consider and weigh all of the evidence, not just the evidence that supports the verdict. *See City of Princeton v. Abbott,* 792 S.W.2d 161, 163 (Tex.App.—Dallas 1990,

Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. Preeclampsia is a condition in which pregnant women have elevated blood pressure and edema (swelling) or proteinuria (protein in the urine).

writ denied) (citing *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986)). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176; *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985). The jury, as fact finder, is the judge of the credibility of witnesses and weight to be accorded their testimony. *See Southwestern Bell Mobile Sys., Inc. v. Franco,* 951 S.W.2d 218, 221 (Tex.App.—Corpus Christi 1997), *rev'd on other grounds,* 971 S.W.2d 52 (Tex.1998) (citing *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951)). Because the appellate court is not the fact finder, it may not substitute its own judgment for that of the trier of fact, even if a different answer could be reached on the evidence. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998) (citing *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986)). The amount of evidence necessary to affirm a judgment is far less than that which is necessary to reverse a judgment. *See Mayes v. Stewart,* 11 S.W.3d 440, 451 (Tex.App.—Houston [14th Dist.] 2000, pet. denied).

A plaintiff must prove four elements in a medical malpractice cause of action in order to prevail: (1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) injury or harm to the plaintiff; and (4) a causal connection between the breach of the applicable standard of care and the injury or harm. *Gonzales v. Outlar,* 829 S.W.2d 931, 933 (Tex. App.—Corpus Christi 1992, no writ); *Garza v. Levin,* 769 S.W.2d 644, 645 (Tex. App.—Corpus Christi 1989, writ denied).

By her first issue, appellant challenges the sufficiency of the evidence on causation. To establish proximate cause, a plaintiff must prove foreseeability and cause-in-fact. *See Bradley v. Rogers,* 879 S.W.2d 947, 953 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (citation omitted). Appellant challenges only the second prong of proximate cause, wherein "the plaintiff must establish a causal connection based upon 'reasonable medical probability,' not mere conjecture, speculation or possibility." *Id.* at 953–54 (citing *Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex.1988); *Lenger v. Physician's Gen. Hosp., Inc.,* 455 S.W.2d 703, 706 (Tex.1970); *Campos v. Ysleta Gen. Hosp. Inc.,* 836 S.W.2d 791, 794 (Tex.App.—El Paso 1992, writ denied)). However, "[a] plaintiff is not required to establish causation in terms of medical certainty nor is he required to exclude every other reasonable hypothesis." *See Bradley,* 879 S.W.2d at 954 (citing *King v. Flamm,* 442 S.W.2d 679, 682 (Tex.1969)).

Appellant contends that the evidence included too many unknown variables to establish causation to a reasonable degree of medical probability, including: (1) microcephaly, which might possibly indicate other congenital abnormalities; (2) placental necrosis and infection; and (3) the fact that the umbilical cord was wound around the fetus. We look first at appellant's assertion that there was evidence suggesting the possibility of the fetus being microcephalic.

The testimony revealed that in Mrs. Sepulveda's medical record, appellant noted that the "Baby looked microcephalic." Appellant testified at trial that the fetus appeared "small headed." However, appellant also testified that the fetus looked grossly normal and was "not abnormally small." There were no entries in Mrs. Sepulveda's prenatal or hospital records of abnormal measurements of the fetus's head. There were no sonogram measurements of the head before delivery or a tape measurement of the head after stillbirth. Further, appellee's expert, Dr. Angeline

Williams, a board certified obstetrician gynecologist, testified that appellant conducted five sonograms over the course of Mrs. Sepulveda's pregnancy, during which time microcephaly could have been diagnosed, but was not. Dr. Williams also testified that the fetus appeared normal, not microcephalic. It did not have other congenital deformities such as low set ears or wide set eyes, which often accompany microcephalic children. In addition, Dr. Williams testified that fetuses that die *in utero* often appear microcephalic after birth because, once dead, they often become dehydrated and the skull bones tend to come closer together causing the head to appear smaller. Finally, even when asked to assume that the fetus was indeed microcephalic, Dr. Williams testified that microcephaly did not cause the demise of the fetus.

Appellant also contends there was objective evidence that showed placental necrosis and infection, and testified there was no way of telling when the infection occurred. However, the pathology consultation report, the objective evidence to which she refers, provided a diagnosis of "[f]ocal acute necrosis and inflammation of decidua." Further, Dr. Williams testified that the pathology report of the placenta indicated that there was no sign of infection, and no reasonably prudent doctor could opine that Mrs. Sepulveda was suffering from chronic infections which caused the fetal demise.

Finally, appellant contends the umbilical cord wound around the fetus was a factor to be considered in determining causation. Appellant testified that, in her opinion, the cord caused the demise of the fetus. Further, as noted by appellant, Dr. Williams did testify, on cross-examination, that she had witnessed unexplained fetal demise; that there were possibly unknown factors; and that the fetal demise could have been caused by the cord. However, Dr. Williams directly stated that upon review of the records and testimony, it was her opinion, based upon reasonable medical probability, that neither microcephaly (decreased head size), venereal disease, yeast infection, the cord being wrapped around the fetus, nor congenital abnormality caused the fetal demise, but rather it was appellant's failure to admit Mrs. Sepulveda to the hospital for close observation of the preeclampsia and delivery of the fetus that caused its death. Dr. Williams specified a precise time when the fetus would have been born alive. She testified with certainty that "there [was] no doubt in [her] mind" that the baby would have been born alive if appellant had adhered to the standard of care following Mrs. Sepulveda's office visit of January 28 and either delivered the full-term fetus or hospitalized the patient for close observation for signs of fetal distress. Dr. Williams also testified "there [was] no doubt in [her] mind" that the fetus would have been born alive had appellant followed the standard of care after Mrs. Sepulveda's February 3 office visit because "[t]he baby was alive on the 3rd of February. And ... unless there was something catastrophic to happen during labor and delivery, then that baby would have been born alive." Moreover, appellant testified that she could have delivered the fetus alive between January 28 and February 3, and that Mrs. Sepulveda reported the fetus's last movement occurred on the evening of February 5.

Based on our review of the evidence, it is apparent that appellee addressed the factors about which appellant now complains. He is not required to exclude every reasonable hypothesis, nor is he required to establish causation in terms of medical certainty. *See Bradley,* 879 S.W.2d at 954 (citations omitted). We conclude appellee established causation to a reasonable degree of medical probability.

Appellant further contends by her first and second issues that she was denied the opportunity to perform an autopsy which could have determined whether the fetal demise was due to congenital abnormality or placental infection. She asserts a spoliation of evidence argument and the offensive use doctrine. *See Trevino v. Ortega,* 969 S.W.2d 950, 953 (Tex.1998) (when party believes other party has improperly destroyed or discarded relevant evidence, she may move for sanctions or request a spoliation instruction); *Texas Dep't of Pub. Safety Officers Ass'n v. Denton,* 897 S.W.2d 757, 761 (Tex.1995) (offensive use doctrine may be asserted against plaintiff who seeks affirmative relief yet maintains evidentiary privileges that protect him from discovery of outcome determinative information not otherwise available to defendant). Appellant contends she was denied access to evidence when her request for an autopsy of the fetus was denied.

At no time during the trial did appellant seek relief based on withholding or destroying evidence. *See Ortega,* 969 S.W.2d at 953. Although there was testimony about an autopsy and the possibility that it could have illuminated additional factors in the fetal demise, appellant did not seek appropriate remedies in the trial court to preserve error for appeal. *See* Tex. R.Evid. 103; *Ortega,* 969 S.W.2d at 953. We conclude this issue has been waived. *See* Tex.R.App.P. 33.1(a).

Accordingly, having considered all of the record evidence in a light most favorable to the party in whose favor the verdict has been rendered, and indulging every reasonable inference deducible from the evidence in that party's favor, we conclude there is evidence to establish causation. Appellant's legal sufficiency challenge fails. Further, having considered and weighed all of the evidence, we conclude the jury's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's factual sufficiency challenge to causation fails. Issues one and two are overruled.

By her third issue, appellant complains that the evidence was insufficient to establish a breach of the standard of care. Because it is not clear from appellant's brief whether she is challenging legal sufficiency, factual sufficiency, or both, we will address both. *See Hinojosa v. Housing Auth. of Laredo,* 940 S.W.2d 763, 765 (Tex. App.—San Antonio, 1997, no writ).

According to appellant, in 1986, the published recommendations of the American College of Obstetricians and Gynecologists (ACOG) set out that a woman was a candidate for delivery if her blood pressure kept rising in the face of treatment and the cervix was favorable. Appellant contends that, at that time, the recommended course of treatment for a compliant patient who showed improvement with treatment was ambulatory management, with semiweekly visits, fetal surveillance, bed rest, patient education, daily weighing, and home blood pressure monitoring. Appellant urges she adhered to this standard of care because Mrs. Sepulveda's condition was improving, her blood pressure decreased with the ordered treatment, her cervix was not ready for delivery, and the fetus was always responsive to tests, had good heart tones, and never showed distress. She contends that Mrs. Sepulveda was not a candidate for delivery on January 23 when mild preeclampsia was first diagnosed, or on January 28, or February 3; rather, she was a perfect candidate for ambulatory management with monitoring.

Appellee disputes appellant's interpretation of ACOG's recommendations. He argues that, in 1986, the ambulatory treatment with fetal surveillance and blood pressure monitoring that appellant sets

forth as the recommended treatment was for "mild pregnancy-induced hypertension and an immature fetus." Appellee contends that it was not the recommended treatment for a mature fetus. He argues the 1986 ACOG bulletin set out if preeclampsia occurred when the fetus was mature, essential management included preventing convulsions, controlling blood pressure, and delivering the baby.

Dr. Williams, appellee's expert, testified that appellant breached the standard of care on January 23 when mild preeclampsia was diagnosed and appellant failed to order strict bed rest, fetal monitoring, and testing. Dr. Williams opined that the standard of care dictated that the baby be delivered, and that there was no other option for any reasonably prudent physician. Furthermore, Dr. Alberto Cepeda, appellant's expert, testified that failure to deliver a mature fetus after a diagnosis of mild preeclampsia, or to hospitalize, monitor, or order strict bed rest without work would be a breach of the standard of care. Appellant testified that after her diagnosis of mild preeclampsia, she took none of these three actions; instead, she allowed Mrs. Sepulveda to continue to work. The jury could reasonably infer that appellant failed to follow the applicable standard of care for treatment of preeclampsia when the fetus is mature, as defined by her own expert, the ACOG bulletin, and Dr. Williams.

Considering all of the record evidence in a light most favorable to the party in whose favor the verdict has been rendered, and indulging every reasonable inference deducible from the evidence in that party's favor, we conclude there is legally sufficient evidence to establish a breach of the standard of care. Appellant's no-evidence challenge fails. Further, considering and weighing all of the evidence, we conclude the jury's finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's factually sufficiency challenge to breach of duty also fails. Accordingly, appellant's third issue is overruled.

In her fourth issue, appellant contends the evidence was legally or factually insufficient to support the award of $250,000 in mental anguish damages. Appellant alleges the evidence did not establish that the mental anguish suffered was the result of the loss of the fetus as part of the mother's body, as opposed to the loss of the fetus as a separate individual. Appellant contends that the overwhelming evidence, specifically the evidence referring to the baby and funeral services, supports only noncompensable mental anguish due to the loss of the fetus as a separate individual. *See Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 79 (Tex.1997).

A woman can recover mental anguish damages resulting from negligent treatment that causes the loss of a fetus as part of the woman's body; however, she may not recover for the loss of the fetus as an individual. *See Trevino,* 941 S.W.2d at 79; *Krishnan v. Sepulveda,* 916 S.W.2d 478, 482 (Tex.1995) (*Krishnan I*); *Escalante v. Koerner,* 28 S.W.3d 641, 645 (Tex. App.—Corpus Christi, pet. filed).

> The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

*Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995) (quoting *Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no

writ)). To survive a legal sufficiency challenge, the plaintiff must present "direct evidence of the nature, duration, or severity of [her] mental anguish, thus establishing a substantial disruption in [her] daily routine." *Parkway,* 901 S.W.2d at 444. Such evidence can be in the form of the testimony of third parties. *See id.* In the absence of such direct evidence, the court will apply "traditional 'no evidence' standards to determine whether the record reveals any evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages" *Id.* (quoting *J.B. Custom Design & Bldg. v. Clawson,* 794 S.W.2d 38, 43 (Tex.App.—Houston [1st Dist.] 1990, no writ)).

The evidence in this case reveals Mrs. Sepulveda last felt the fetus move on the night of February 5. On the morning of February 6, 1986, Mrs. Sepulveda attended her last pre-natal visit with appellant. When appellant detected no fetal heart tone, she conducted an ultrasound examination and determined that the fetus was not viable. Appellant informed Mrs. Sepulveda that the fetus was dead. Mrs. Sepulveda was admitted to the obstetric ward with a diagnosis of "fetal demise at 38 weeks of gestation."

Esmeralda Ramirez Correa, Mrs. Sepulveda's younger sister, testified that her sister was excited and pleased about her pregnancy, and took good care of herself. Correa visited Mrs. Sepulveda the evening she was admitted to the hospital. Correa testified:

> "[Olga] was crying. She couldn't believe that she had lost the baby after having her almost the whole nine months. She was devastated. And she—she felt really guilty that a part of her had—a part of her body had failed her. And she was broken hearted.... I think she was in disbelief.... She cried the whole time."

On cross examination, Correa provided the following testimony:

Q: Your sister obviously was appropriately happy in order in her pregnancy [sic], the fact that she was pregnant, right?

A: She was very excited she was pregnant.

Q: Right. [A]nd when this situation developed where the fetus had died, she was saddened about that fact, too, correct, as you would expect?

A: Of course. She was very broken hearted.

Q: And if I understand correctly, she related that to the fact that her baby had died, correct? [Y]ou mentioned that she had mentioned—

A: It was a part of her that died.

Q: And—

A: Yes, part of your body dies. [Y]ou carry a baby. Of course, men don't know how it feels like, but women do. You carry a baby for months. It dies. It is a part of you that dies.

Q: I understand. But also, it is a child, you perceive that it is a child?

A: Of course.

Q: And—

A: Yes, it is, it is a fetus until it is born, yes. But this baby was born.

Q: And a part of the grief that you feel in regards to that is because you lost your child?

A: Could you state that again, please.

Q: The part of the grief that you are going to feel, naturally, when that occurs, is the fact that a child that you have anticipated having, you now do not have?

A: Yes, but along with that, along with that, it is a part of you, a part of

me, a part of Olga that dies, and the failure, the disappointment that she went through besides actually losing the baby, your self-esteem. It is like you are not worthy.

Additionally, Sylvia Ramirez Davila, another sister of Mrs. Sepulveda, testified that in the hospital room, Mrs. Sepulveda was crying, alone and with others. "She was devastated. She was just broken, kept crying and crying, and nothing could seem to calm her down.... [S]he was crying with hurt, with pain, with, you know, she was crying harder...." Davila believed Mrs. Sepulveda was going through depression, an "emotional state of mind." She had gone through nine months with the fetus in her body and all of a sudden, she lost it. Davila believed her sister felt she was losing a part of her body, a part of herself; she felt like a failure. Ramiro Ramirez, Mrs. Sepulveda's brother, stayed with her that evening. Ramirez testified his sister cried off and on through the night. She was "really broken and really weeping, something that [he] had never seen in her. Kind of like after all these years, she kind of felt like—like a failure...." To Ramirez, his sister must have felt like the world had closed up on her, that there was no future for her. She was confused and anguishing about herself asking, "How could this happen to me?" Ramirez's wife, Maria Elena Ramirez, also testified that when she and her husband walked into the hospital room, Mrs. Sepulveda looked devastated, and held her brother's hand and cried. She held herself [her body, her stomach] and said to her brother, "I lost my baby. My baby, Ramiro, it is gone."

The following nurses' entries in the hospital record also show Mrs. Sepulveda cried at intervals on February 6: "Questions held due to emotional status of the patient. Emotional state: Weepy. Has just learned of fetal demise." "Weeping loudly." The nurses' notes entered at 5:00 p.m. on February 6, state: "Continues frequent crying." Mrs. Sepulveda complained of a headache that day. Emotional support was provided. On February 7, the entries reveal that Mrs. Sepulveda was crying and depressed.

From this direct evidence, the jury could have determined that the nature of the mental anguish Mrs. Sepulveda was experiencing was, in part, the result of the loss of the fetus as part of her body. The jury could also have determined the duration and severity of the mental anguish she suffered, thus, establishing a substantial disruption in the her daily routine.

Appellant also contends there is no evidence that Mrs. Sepulveda suffered mental anguish as a result of having to undergo surgery. *See Trevino,* 941 S.W.2d at 78 (Pitocin administered after labor progressing too slowly; however, patient began hemorrhaging and emergency caesarean section performed). While it is true Mrs. Sepulveda did not undergo a caesarean section or suffer mental anguish as a result of having to undergo surgery as did the plaintiff in *Trevino,* she learned of the death of the fetus on the morning of February 6. The fetus was not delivered until approximately noon on February 7, after almost twenty-four hours of labor which was induced by the drug, Pitocin. Mrs. Sepulveda endured the rigors of labor and childbirth, all the while knowing that it would result in a stillbirth of a dead fetus.

Accordingly, we conclude the above referenced testimony constitutes evidence of the nature, duration and severity of Mrs. Sepulveda's mental anguish. The evidence relates, in part, to the grief Mrs. Sepulveda felt over the loss of the fetus as part of her own body, not as a separate individual. Therefore, appellant's legal sufficiency argument fails. Further, we conclude that

the testimony constitutes factually sufficient evidence to support the conclusion that Mrs. Sepulveda suffered compensable mental anguish. Appellant's factual sufficiency argument fails.

Appellant alternately contends that the jury's award was excessive. An allegation that damages are excessive invokes the same standard of review as any factual sufficiency challenge. *See Maritime Overseas,* 971 S.W.2d at 406. To withstand appellate scrutiny, the damages award must reflect an amount that, in the standard language of the jury charge, would fairly and reasonably compensate Mrs. Sepulveda for her mental anguish. *See Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996). Because personal injury damages are unliquidated and are not capable of certain measurement, the jury has broad discretion in assessing the amount of damages in a personal injury case. *See Transit Management Co. of Laredo v. Sanchez,* 886 S.W.2d 823, 826 (Tex.App.—San Antonio 1994, no writ); *Pipgras v. Hart,* 832 S.W.2d 360, 366 (Tex.App.—Fort Worth 1992, writ denied). We defer to the jury's discretion in determining awards for such damages. *See George Grubbs Enters., Inc. v. Bien,* 881 S.W.2d 843, 858 (Tex.App.—Fort Worth 1994), *rev'd on other grounds,* 900 S.W.2d 337 (Tex.1995); *Arrington v. Paschall,* 352 S.W.2d 866, 870 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.).

Although appellant complains that the $250,000 award is excessive, she does not explain why she believes it is excessive. It appears that appellant is arguing the award is excessive because the mental anguish suffered by Mrs. Sepulveda was due to the loss of the fetus as a separate individual and therefore not compensable. However, we have already concluded the evidence supports a compensable injury for loss of the fetus as part of her body. Therefore, this argument fails.

Accordingly, deferring to the jury's discretion in determining this award for mental anguish, we conclude the jury differentiated between the two types of losses, concluding Mrs. Sepulveda's mental anguish was compensable because it resulted from the loss of the fetus as part of her body. Given the evidence recited above, we conclude the damages award reflects an amount that would fairly and reasonably compensate Mrs. Sepulveda for her mental anguish for that loss. We cannot say that the amount of the jury's award for mental anguish damages is so contrary to the overwhelming weight of the evidence as to be manifestly unjust. Appellant's fourth issue is overruled.

By her fifth issue, appellant contends the trial court improperly admitted prejudicial evidence of familial attachment. She argues that the evidence was prejudicial and irrelevant.

The admission or exclusion of evidence is a matter within the trial court's exclusive discretion. *See Syndex Corp. v. Dean,* 820 S.W.2d 869, 873 (Tex.App.—Austin 1991, writ denied).

> To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment.

*Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989) (citations omitted); *see* Tex.R.App.P. 44.1(a)(1). "To be relevant, the proposed testimony must be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549,

556 (Tex.1995) (quoting *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985)).

Appellant first complains of the following portions of testimony regarding: (1) Olga carrying the fetus and not letting it go; (2) Olga saying "My baby, my baby. I can't believe my baby is gone;" (3) funeral services that were held for the remains; (4) comparisons of the fetal remains and live born children of a witness; and (5) Olga's behavior at the funeral services. Appellee, however, contends this testimony was admissible to provide context and detail regarding the mental anguish suffered by Mrs. Sepulveda, and to establish Mrs. Sepulveda's conduct, what she did, what she said, the context of such conduct, and the witness's present sense impression of Mrs. Sepulveda's emotional condition.

This complained-of testimony relates to the nature, duration or severity of the mental anguish suffered by Mrs. Sepulveda. *See Parkway,* 901 S.W.2d at 444. The jury was asked to discern whether the anguish was felt for the loss of the fetus as part of the body or as a separate individual. The jury was asked to limit its damage award to only compensate the former. Additionally, the jury was instructed to distinguish between the two types of anguish and to award damages for only one. Finally and importantly, the complained-of testimony was favorable to the defense to the extent it could arguably have supported mental anguish resulting from the loss of the fetus as a separate individual.

Appellant also complains of testimony regarding the appearance of the stillborn fetus and of the admission of photographs of the fetus prepared for the funeral and of Mrs. Sepulveda with her later born son. Appellee contends the evidence regarding the fetus was offered to show the "normal" appearance of the fetus, and the photographs of Mrs. Sepulveda with her later born son were offered and admitted "to assist the trier of fact to compare [Mrs. Sepulveda's] weights and ... body size." At the request of defense counsel, the court gave a limiting instruction as to the latter photographs.

We conclude that the trial court did not abuse its discretion in making the decision to admit the evidence as it was sufficiently tied to the facts of the case so as to aid the jury in resolving factual disputes. Further, error, if any, was not calculated to cause and probably did not cause the rendition of an improper judgment. Issue five is overruled. *See* Tex.R.App.P. 44.1(a)(1).

By her sixth issue appellant urges charge error. She complains that the court erred in generally instructing the jury that the meaning of "injury in question" was "the loss of the fetus as a part of the body of Olga Ramirez Sepulveda." Appellant proposed an instruction that simply read "the loss of the fetus." The trial court overruled appellant's objection. On appeal, she contends that the instruction commented on the weight of the evidence and instructed the jury that the loss of the fetus was definitely a loss of part of the body.

Appellant also complains of the following specific damage instruction: "You are instructed that a woman can recover mental anguish damages for the loss of a fetus as part of her body, however, a woman cannot recover mental anguish damages as a result of a loss of a fetus as a separate individual." Appellant contends the trial court abused its discretion when it denied her request for the following language: "Do not include any damages that relate to the grief that Olga Sepulveda felt over the loss of the fetus as a separate individual and not as a part of her own body." Appellant argues that

appellee's instruction tells the jury what the litigant may "recover," instead of telling the jury what it may "award." Appellee contends appellant is simply urging a distinction without a difference.

Trial courts have considerable discretion in deciding what instructions are necessary and in submitting explanatory instructions and definitions. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997); *Howell Crude Oil Co. v. Donna Refinery Partners,* 928 S.W.2d 100, 110 (Tex.App.—Houston [14th Dist.] 1996, writ denied). An appellate court reviews allegations of error in the jury charge under an abuse of discretion standard. *See Texas Dep't of Human Serv. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *See id; Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). "A judgment should not be reversed because of a failure to submit other and various phases or different shades of the same question." *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.,* 794 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1990, writ denied).

Texas Rule of Civil Procedure 273 provides that either party may present to the court and request written questions, definitions, and instructions to be given to the jury, and the court may give them or a part thereof, or may refuse to give them, as may be proper. *See* Tex.R.Civ.P. 273. An instruction is improper if it directly comments on the weight of the evidence, but it shall not be objectionable if it incidentally comments on the weight of the evidence when it is properly a part of an instruction. *See* Tex.R.Civ.P. 277.

In the instant case, both sides submitted requested instructions. The trial court reviewed the law in light of the Texas Supreme Court decisions in *Krishnan I* and *Trevino,* and charged the jury with an instruction that mirrored the language of the supreme court. *See Trevino,* 941 S.W.2d at 79 (a woman can recover mental anguish damages resulting from negligent treatment that causes the loss of a fetus only as part of the woman's body); *Krishnan I,* 916 S.W.2d at 481, 482 (same). The court informed the parties that any comment which might be contained in the definition was necessary in order to aid the jury when considering some of the evidence which may tend to show mental anguish damages for both the loss of a separate individual and a part of the body so that it would be clear that only one type of damages was recoverable: The trial court explained:

> I'm instructing them, that the loss of the fetus—that the injury is the loss of the fetus as a part of the body. I feel that's the only way I can keep in line with the *Krishnan* Supreme Court case and the *Trevino* case, to make it clear that they're not entitled to anything else; they are not seeking anything else; and even if they were, I wouldn't allow them to seek anything but mental anguish as a result of the loss of the fetus as a part of the body of Olga Sepulveda.

We conclude the trial court was within its discretion to give the instructions set out above. Additionally, even had the court abused its discretion, the language used was clearly not calculated to cause the rendition of an improper judgment, nor did it cause the rendition of an improper verdict. *See* Tex.R.App.P. 44.1(a)(1). Issue six is overruled.

In her seventh issue [3] appellant complains of the following jury argument by appellee:

3. Appellee contends that appellant waived this issue. Texas Rule of Appellate Procedure

> So, all of the mental anguish that has been testified about here, is mental anguish that she suffered as a result of the loss of the fetus as a part of her body. Because the courts have held that until the baby is born alive, it is not an individual.

To complain about improper jury argument on appeal, "it is necessary to show: (1) an error; (2) not invited or provoked; (3) that was preserved by proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial; (4) that was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge; and (5) that the argument by its nature, extent, and degree constituted reversibly harmful error." *NationsBank of Tex., N.A. v. Akin, Gump, Hauer & Feld, L.L.P.,* 979 S.W.2d 385, 398 (Tex.App.—Corpus Christi 1998, pet. denied) (citing *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979)).

Appellant first contends the argument was not provoked or invited. We disagree. Appellant's own closing argument made numerous references to Mrs. Sepulveda's mental anguish over the loss of her baby as a human being. Most specifically, appellant argued, "[t]he evidence here relates to the loss of the baby as a human being, and that's not compensable.... None of the evidence about the way that she felt, that she was now pregnant, that she was about to give birth to her own child, that is not compensable." In summary appellant also argued,

> You are going to realize that all of that evidence from the sisters, from the sister-in-law, from the brothers, from the pictures, all relate to this young lady thinking, mental anguish, related to the loss of her baby as a human being, not as a fetus as a part of her body, but as a human being.

It is apparent that appellant invited or provoked appellee to respond with rebuttal argument that the anguish related to the loss as part of the mother's body. *See Central Nat'l Gulfbank v. Comdata Network, Inc.,* 773 S.W.2d 626, 628 (Tex. App.—Corpus Christi 1989, no writ) (to show error in improper argument, appellant must prove improper argument was not invited).

Appellant also complains appellee's argument misstates the controlling law regarding damages.[4] As appellant notes, the Texas Supreme Court carefully delineated that a person could recover mental anguish

33.1 provides, in general, as a prerequisite to presenting a complaint for review on appeal, the record must show a timely request, objection or motion was made to the trial court and ruled on either expressly or implicitly. *See* Tex.R.App.P. 33.1(a). Several courts now recognize that "in general" has loosened the once mandatory rule that an express ruling is required to preserve a complaint for appeal. *See Hardman v. Dault,* 2 S.W.3d 378, 381 (Tex.App.—San Antonio 1999, no pet.); *Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex.App.—Fort Worth 1999, pet. denied); *Blum v. Julian,* 977 S.W.2d 819, 823 (Tex.App.—Fort Worth 1998, no pet.). Thus, error may be preserved without an express ruling on an objection, so long as the record indicates in some way the trial court ruled on the objection either expressly or implicitly. *See Frazier,* 987 S.W.2d at 610 (citing Tex.R.App.P. 33.1(a)).

In the present case, appellant objected to appellee's argument, but did not obtain an explicit ruling on her objection. Appellee responded that it was a rebuttal argument. The trial court then informed appellee, "You may proceed." It is apparent the trial court was aware of appellant's objection and appellee's response to the objection. By telling appellee to proceed following this exchange, the trial court implicitly overruled appellant's objection. Thus, the issue was preserved for our review.

4. Appellant specifically objected "to talking about ... and giving additional instructions of the law that is not part of the case."

damages for the loss of a fetus as a part of the body, but not as a separate individual. *See Trevino,* 941 S.W.2d at 79. Further, the Supreme Court has determined that recovery for the loss of a fetus is precluded when there has been no live birth. *See id.* at 78 (citing *Witty v. American Gen. Capital Distribs., Inc.,* 727 S.W.2d 503, 504 (Tex.1987)); *Pietila v. Crites,* 851 S.W.2d 185, 187 (Tex.1993) (citing *Blackman v. Langford,* 795 S.W.2d 742, 743 (Tex.1990) (party precluded from recovery as a matter of law because no wrongful death or survival cause of action for the death of a fetus)). Appellee did not misstate the law of the case regarding damages when he argued that "all of the mental anguish that has been testified about here, is mental anguish that she suffered as a result of the loss of the fetus as a part of her body." To the extent the statement that "[b]ecause the courts have held that until the baby is born alive, it is not an individual" is arguably a misstatement of law, we conclude it could have been cured by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge, and appellant requested none. *See NationsBank,* 979 S.W.2d at 398. Appellant's seventh issue is overruled.

In issue eight, appellant contends appellee failed to prove standing before the trial court submitted the case to the jury. "In order for a person to maintain a suit, it is necessary that he have standing to litigate the matters at issue." *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984). Generally, personal representatives of a decedent's estate are the only people entitled to sue to recover estate property. *See Shepherd v. Ledford,* 962 S.W.2d 28, 31 (Tex.1998) (citation omitted). However, an exception exists, and heirs at law can maintain a survival suit within the period allowed by law for administration of an estate if they allege and prove there is no administration pending and none is necessary. *See id.* at 31–32. The issue of standing is purely a question of law for the court to determine. *See Cleaver v. George Staton Co.,* 908 S.W.2d 468, 472 (Tex. App.—Tyler 1995, writ denied).

Appellee secured an order, signed March 7, 1997, from the probate court that provided there was "no necessity of administration of the estate" and "no requirement for the appointment of a personal representative." After the case was submitted to the jury, on appellee's motion, the trial court judicially noticed the order of the probate court that found no administration existed and none was necessary. A probate order setting out these recitals:

> shall constitute sufficient legal authority to all persons owing any money, having custody of any property, or acting as registrar or transfer agent of any evidence of interest, indebtedness, property, or right belonging to the estate, for payment or transfer to the distributees of the decedent, and such distributees shall be entitled to enforce their right to such payment or transfer by suit.

Tex.Prob.Code Ann. § 180 (Vernon 1980).

Appellant now contends a court may not take judicial notice of another court's orders, or, at the very minimum, the opposing party is entitled to an opportunity to challenge the propriety of taking judicial notice and the manner of proof.

The trial court has authority to take judicial notice of adjudicative facts "at any stage of the proceeding." Tex.R.Evid. 201(f). It is mandatory that the court take judicial notice "if requested by a party and supplied with the necessary information." Tex.R.Evid. 201(d). Rule 201(b) allows a court to take judicial notice of a fact that is not subject to reasonable dispute. *See* Tex.R.Evid. 201(b). So long as a party provides proof of another court's records, a court can take judicial notice of another

court's records. *See Southern County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 463 (Tex.App.—Corpus Christi 2000, no pet.); *Bhalli v. Methodist Hosp.,* 896 S.W.2d 207, 210 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

Appellee made the proper request and supplied the trial court with the necessary information by filing certified copies of the motion and the probate court's order regarding the need for an administration. Appellant received service, copies and attended a hearing on the motion where she had the opportunity to challenge the propriety of taking judicial notice and the manner of proof, but chose not to do so. *See* TEX.R.EVID. 201(e) (upon timely request party entitled to opportunity to be heard as to propriety of taking judicial notice and tenor of matter noticed); *National County Mut. Fire Ins. Co. v. Hood,* 693 S.W.2d 638, 639 (Tex.App.—Houston [14th Dist.] 1985, no writ). We conclude, therefore, the trial court properly took judicial notice of the probate court's order.

Appellant further contends that it was error to re-open evidence to allow appellee to establish standing after the case had been submitted to the jury. Texas Rule of Civil Procedure 270 allows, but does not require, a judge to permit additional evidence. *See* TEX.R.CIV.P. 270. "It is within the trial court's discretion and will be disturbed on appeal only when clear abuse has been shown ." *See Guerrero v. Standard Alloys Mfg. Co.,* 598 S.W.2d 656, 658 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.) (citations omitted).

Appellant relies on *Guerrero* in support of her argument that a party may not re-open evidence to prove standing. However, we conclude *Guerrero* does not provide such support. In *Guerrero,* the defendant sought to re-open the evidence after the verdict and before judgment, in order to introduce evidence that a borrowed servant had worker's compensation coverage. *See id.* at 657. The defendant had failed to plead or offer evidence to prove that fact. *See id.* The court of appeals concluded that the trial court did not err in refusing to re-open the evidence because the question of compensation coverage of the defendant sued would be "controversial." *Id.* This is prohibited by rule 270 of the Texas Rule of Civil Procedure that provides "in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." *Id.* (quoting TEX. R.CIV.P. 270).

The issue in the present case is that of standing, a matter of law for the court to determine. The evidence submitted was an order of the probate court. The order is not being challenged by appellant. Appellant only challenges the propriety of taking judicial notice, which we have found appropriate, and the timeliness of the proof. Accordingly, the trial court did not abuse its discretion in re-opening evidence to allow appellee to establish standing after the case was submitted to the jury. Issue eight is overruled.

In issue nine, appellant complains that the suit was not brought in the capacity as assignee, only as "heir," entitling appellee to only two-thirds of the amount awarded the decedent. Under intestate succession, Mrs. Sepulveda's spouse, Humberto Sepulveda, Jr., was heir to one-third interest in her personal estate. *See* TEX.PROB.CODE ANN. § 38(b) (Vernon 1980). The remaining two-thirds interest passed to her only child, Humberto Sepulveda, III. *See id.* Approximately two years after Mrs. Sepulveda's death, Mr. Sepulveda filed a disclaimer of interest in his wife's estate and/or an assignment of his interest to

Humberto, III.[5] The document was filed in the county court and the district court where the action was pending.

Appellant contends the disclaimer was ineffective as a renunciation of his interest because it was not filed within nine months of the death of Mrs. Sepulveda. *See* TEX.PROB.CODE ANN. § 37A(b) (Vernon Supp.2001). We agree. "[A] written memorandum of disclaimer disclaiming a present interest shall be filed not later than nine months after the death of the decedent. . . ." *See id.* Mr. Sepulveda filed the document approximately two years after his wife's death, thus, it was ineffective as a disclaimer that renounced his interest. However, failure to comply with the nine-month filing provision renders a disclaimer ineffective "except as an assignment of such property to those who would have received same had the person attempting the disclaimer died prior to the decedent." TEX.PROB.CODE ANN. § 37A(a) (Vernon Supp.2001). Appellant does not challenge the effectiveness of the document as an assignment. Therefore, we *conclude the document effectively assigned* Mr. Sepulveda's interest to Humberto, III.

Appellant further complains, however, that because the suit was brought in the name of the heir and not in the capacity of personal representative of the estate of Mrs. Sepulveda or as assignee of Mr. Sepulveda, the child is entitled to recover only two-thirds of the estate because of the intestate succession laws. However, "[t]he legal effect of a pleading in Texas is not determined by its style or name, but by its contentions and purpose." *Guerrero,* 598 S.W.2d at 657–58 (citations omitted).

The petition in this case is styled *Senovio Ramirez, Jr., Temporary Guardian of Property (Estate) of Humberto Sepulveda III as heir of Olga Ramirez Sepulveda, deceased v. Elizabeth G. Krishnan, M .D.* It alleges Humberto, III, was and is the sole heir. It pleads that Mr. Sepulveda disclaimed or, in the event the disclaimer was ineffective, assigned his interest in Mrs. Sepulveda's estate to Humberto, III, his minor son. Further, it prays for judgment against the defendant and for other relief to which plaintiff may be entitled, "in his capacity as Temporary Guardian of Property (Estate) of Humberto Sepulveda, III, for damages suffered by OLGA RAMIREZ SEPULVEDA, as set out herein."

The substance of the pleading effectively pleads the assignment and seeks recovery for what is owned by the child. Humberto, III, is the only heir of his mother's estate by virtue of the laws of intestate succession and his father's valid assign-

5. The disclaimer and renunciation of future interest, at issue, provided, in part:

> WHEREAS, Humberto Sepulveda, Jr.[,] wants for himself no part of any such recovery [from the present suit] to which his wife, Olga Sepulveda, was entitled, and wants his minor son, Humberto Sepulveda, III, to recover 100% of such entitlement, after attorneys' fees and case expenses are deducted.
>
> THEREFORE, Humberto Sepulveda, Jr.[,] disclaims and renounces any and all his individual interest and rights to any recovery that may be forthcoming from any judgment entered in this case (if any he own[s] ), and further disclaims and renounces any and all his individual interest and right to any portion of the estate of Olga Ramirez Sepulveda, his deceased wife, if any he have.
>
> FURTHER, in the unlikely event that this and any prior disclaimer of such rights are invalid or ineffective, and only in such event, I hereby assign all my rights (if any) in the estate of Olga Ramirez Sepulveda to my said son, Humberto Sepulveda, III[,] and I do deliver such assignment by filing the original of this document with the County Clerk in the deed records of Hidalgo County, Texas, and by filing a certified copy of such document in the subject cause with the District Clerk of said county.

ment. Thus, based on the contentions of the petition and purpose of the suit as set out in the petition, we conclude the legal effect of the petition is that Ramirez brought the suit as guardian of the property of Humberto, III, who is heir of Mrs. Sepulveda *and* assignee of Mr. Sepulveda. Thus, the style need not specifically include the word "assignee" or the phrase "personal representative" as is urged by appellant.

Appellant also urges a judgment can only be entered in favor of the parties in the capacity in which they sue. Having concluded the parties brought the lawsuit in the capacity of guardian of the property of the heir and assignee, the judgment did conform to the pleadings. *See* TEX. R.CIV.P. 301 (judgment of court shall conform to pleadings, nature of case proved and verdict, if any).

Additionally, appellant asserts that the trial court erred in allowing the pleadings to be amended after trial. Appellant contends that she was prejudiced because the amended pleadings exposed her to a full claim instead of the two-thirds claim and her settlement strategy would have been greatly influenced by knowing that she risked full range exposure at trial.

A trial amendment may be filed only with leave of court. *See Wendell v. Central Power & Light Co.*, 677 S.W.2d 610, 617 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The request for leave is addressed to the trial court's sound discretion, its ruling being reversible only on a showing of abuse. *See id.* An amendment to the pleadings shall be permitted after the verdict and before judgment, absent surprise or prejudice. *See Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990) (citations omitted); *Fincher v. B & D Air Conditioning & Heating Co.,* 816 S.W.2d 509, 514 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (after trial, a partner who was served as representative of partnership but not named individually, was added individually); *see also* TEX. R.CIV.P. 63 & 66.

After verdict and before judgment, appellee sought leave to amend his pleadings to clarify that Ramirez was bringing suit in his capacity as guardian of the minor who was heir and assignee. The petition alleged the assignment. During the trial, the assignment was introduced into evidence as an exhibit, without objection. We conclude the amendment simply conformed the pleadings and the evidence presented at trial. Further, appellant did not make any showing to the trial court that her settlement strategy or her trial posture would have changed knowing that she risked full range exposure at trial. She has not shown evidence of surprise or prejudice. Accordingly, the trial court properly granted leave to file the amendment. Appellant's ninth issue is overruled.

In her tenth issue, appellant complains that the trial court erred in reading back testimony without a specific request from the jury. Texas Rule of Civil Procedure 287 provides, in pertinent part: "If the jury disagree as to the statement of any witness, they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness' testimony on the point in dispute...." TEX.R.CIV.P. 287. The judge is given broad discretion in determining what portions of the testimony are relevant to the jury's request to have testimony reread. *See Texas Employers' Ins. Ass'n v. Dempsey,* 508 S.W.2d 858, 860 (Tex.Civ. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). The jury is entitled to hear only the specific part of the testimony relevant to the point in dispute, and only when the jury notifies the court that it disagrees upon the statement made by the witness.

*Hill v. Robinson,* 592 S.W.2d 376, 384 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.); *Scott,* 423 S.W.2d at 354.

During deliberation, the jury sent the following note to the court: "We, the jury are in disagreement to several of the answers that Olga Sepulveda gave in her 1989 deposition, such as, what she told the doctor what she was concerned about." Responding to the court's request for more specificity, the jury sent a second note stating, in relevant part: "We also disagree on the symptoms that Mrs. [Sepulveda] informed the Doctor about in the deposition. Please verify in the testimony with us."

The court selected the following deposition testimony regarding symptoms that was read back to the jury:

Q: All right. Would you talk about this swelling? Was it in your feet?

A: It was all over.

Q: All over?

A: My hands, my face, my feet, my whole body was swollen.

Q: Was it noticeable?

A: Yes sir.

Q: Did you ever tell Doctor Krishnan, what do I do about this swelling.

A: No.

Appellant contends the court should have required the jury to specify the symptoms that were in dispute. She further complains that the court should have limited the selected testimony to the disputed symptoms reported, and should not have included testimony about Mrs. Sepulveda's visible condition.

In this case, the trial court carefully considered its responsibility in the application of rule 287 to resolve any disagreement the jury had as to Mrs. Sepulveda's testimony regarding symptoms reported to appellant. The court selected the portion of the record it considered responsive to the inquiries of the jury. It provided a relevant portion of testimony that addressed the jury's disagreement regarding the symptoms about which Mrs. Sepulveda informed appellant. Accordingly, the court did not abuse its discretion in the selection of the questioned testimony. Issue ten is overruled.

 Finally, by her eleventh issue, appellant contends cumulative error prejudiced appellant. Where there are numerous errors, the cumulative effect may be harmful even if the individual errors, taken alone, are not. *See Weidner v. Sanchez,* 14 S.W.3d 353, 377 (Tex.App.—Houston [14th Dist.] 2000, no pet.). However, having found no error or harmless error, we conclude there was no cumulative error that prejudiced appellant. Her eleventh issue is overruled.

Accordingly, the judgment of the trial court is AFFIRMED.