NO. 07-01-0252-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 27, 2001

_____

JOHN SANCHEZ and CONNIE SANCHEZ, individually
and as next friend of REHNAE LEANN SANCHEZ, a child,

Appellants

v.

SYLVIA GARZA ESPINOZA,

Appellee

_____

FROM THE 72nd DISTRICT COURT OF LUBBOCK COUNTY;

NO. 98-504,362; HON. J. BLAIR CHERRY, JR., PRESIDING

_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

John and Connie Sanchez, individually and as next friend of Rehnae Leann Sanchez, a child, (collectively referred to as Sanchez) appeal from a final judgment denying them recovery against Sylvia Garza Espinoza. Through one point, they contend that the trial court erred in overruling their objection to aspects of the closing argument of Espinoza's attorney. We overrule the point and affirm the judgment.

## *Background*

Sanchez sued Espinoza for negligence. The cause of action arose from an automobile collision in which the litigants were involved. Trial was to a jury. While counsel for Espinoza made his final argument, Sanchez objected, contending that their opponent was asking the jury to stand in the shoes of and assess liability from the perspective of Espinoza. The trial court initially sustained the objection but later permitted her to continue with the allegedly improper argument. The following is the colloquy depicting the utterances in dispute:[1]

Nelson:    . . . Let's talk about the instructions and definitions, and we have touched on that briefly. But negligence means the failure to use ordinary care. It is not just carelessness. And ordinary care means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

    Let's put yourself in Sylvia's place. Sylvia is making the left-hand turn. Sylvia . . .

Lanehart:    Your Honor, I am going to object to putting or placing the jury in the Plaintiffs' shoes. That is an improper argument.

Court:    Sustained. Reword it a little bit, Mr. Nelson.

Nelson:    Well, you put yourself in the parties' place. You put yourself in his place, and you put yourself in Sylvia's place, and you put yourself behind Sylvia's wheel of her car.

Lanehart:    Same objection, Your Honor.

Court:    I am going to overrule. I will let him make the argument.

Nelson:    Ordinary care means that degree of care used by a person or ordinary prudence under the *same or similar circumstances. Let's put yourself in these same circumstances.*

---

[1]Attorneys Nelson and Lanehart represented Espinoza and Sanchez, respectively.

You are coming around to make the turn.  You see a green arrow.

Lanehart:     May I have a running objection to this, your Honor?

Court:        Yes, sir, you may.

Nelson:       The last thing you see is a green arrow, before you start your turn, and then you look into the intersection, and you see there is nobody in the intersection.  We have all been through that intersection before.

And you go ahead and start your turn, and you are halfway through your turn.  And all of a sudden, you see the Plaintiffs' vehicle coming.  You turn to the left to avoid — hopefully to avoid this collision.  When you get to that intersection, there isn't anybody in it.

The last thing you saw was the green light.  What are you to do?  You feel as though you have every right in the world to enter that intersection.  You feel as though you have every right in the world to complete your turn.

*Is that negligence?  Is that failing to use ordinary care?*  I maintain that it is not.  Let's put yourself in the Plaintiffs' position.  Put yourself in John's position.

John is driving a vehicle, the white Suburban.  By his own testimony and confirmation by his wife, they came to the intersection, going south.  They were in the middle lane of traffic.  They stopped in observance of the red light.

Everybody that has ever driven a vehicle knows that when you stop, in observance of a red light, you have to stay there until you can move into the intersection without danger of causing a wreck.  And that puts on us a burden that we have got to watch where we are going before we start up again.  That puts a burden on us before we start up.

And if we take his testimony at its word, that '[i]t was a green light, and I started up,' *we have an obligation as a careful driver, as an ordinary prudent driver, to watch where we are going* an [sic].

And it is undisputed where his head was turned when he pulled out in that intersection.  It is undisputed that he was turned to the right,

3

and he was talking to his wife. His wife confirms that they were talking. He confirms that they were talking.

There is no doubt that when he pulled out, he was looking this way, and there is no doubt that he had an obligation to be watching where he was going, to be paying attention. Had he been watching where he was going, what could he have done?

He could have exercised ordinary care and stopped or not gone out, to begin with. And if that had been the case, Ms. Espinoza would have been able to finish her turn, there would have been no accident, and we wouldn't be here today.

*Ordinary care is judged by what other people would do in the same or similar circumstances.* Let's take the lady that was to John's right . . . . The testimony that you have heard about what she did is very telling.

If the light turned green for John, then it turned green for her. Did she pull out into the intersection? Did she have a wreck? No. Did she pull out in the intersection? No.

And the reason she didn't, certainly a logical inference from the evidence is that she saw Sylvia, and because she saw them [sic] in the intersection making the turn, she didn't pull out.

*What would an ordinary prudent person have done in the same or similar circumstances*? They would have stopped until the intersection cleared. *Is there negligence*? Yes. The negligence is on the Plaintiff, not the Defendant . . . .

(Emphasis added).

### *Discussion*

Rule of procedure obligates counsel to confine his argument "strictly to the evidence and to the arguments of opposing counsel." TEX. R. CIV. PROC. 269(e). This does not mean that same must be sterile or nondescript. The opposite is quite true for great latitude is allowed him in discussing the facts and issues. *Ramirez v. Acker*, 138 S.W.2d 1054,

4

1055 (Tex. 1940). For instance, he may discuss the "environments" or circumstances of the case, the reasonableness or unreasonableness of the evidence, and the probative effect (or lack thereof) of the evidence. *Id.* So too does he have the leeway to "present his case as to make the law contained in the charge applicable to the facts of the case." *Deviney v. McLendon*, 496 S.W.2d 161, 166 (Tex. Civ. App.--Beaumont 1973, writ ref'd. n.r.e.). This leeway also includes the opportunity to encourage the jury to weigh, evaluate, and test the evidence before it. *Gorman v. Life Ins. Co.*, 859 S.W.2d 382, 389 (Tex. App.-- Houston [1st Dist.] 1993, no writ). And, whether counsel's argument exceeded these expansive boundaries is a decision lying within the discretion of the trial court. *Mandril v. Kasishke*, 620 S.W.2d 238, 247 (Tex. Civ. App.--Amarillo 1981, writ ref'd. n.r.e. ). As long as the decision comports with guiding rules and principles, we must uphold it.

Here, Sanchez contends that Espinoza's attorney exceeded the bounds of propriety when he invited the jurors to put themselves in the place of his client when determining liability. Admittedly, courts have held as improper argument that asks the jury to stand in the shoes of a party. *See e.g., Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478, 481-82 (Tex. 1943); *World Wide Tire Co. v. Brown*, 644 S.W.2d 144, 145-46 (Tex. App.-- Houston [14th Dist.] 1982, writ ref'd. n.r.e.). This is so because the jurors are being asked to consider the case from an improper viewpoint, *Fambrough v. Wagley*, 169 S.W.2d at 482, that is, from the perspective of an interested party as opposed to a neutral fact-finder. Moreover, if one were to focus simply upon the suggestion at bar that the jurors place themselves in the position of Espinoza, there may be a problem.

5

Yet, the trial court was not entitled to isolate the comment from its context. Rather, it must be analyzed in light of the entire argument. *Williams v. State*, 826 S.W.2d 783, 785-86 (Tex. App.--Houston [14th Dist.] 1992, pet ref'd). In other words, one looks at the context of the utterances to determine their propriety. *Id.* And, the context at bar is most telling. For instance, immediately before first inviting the jury to place themselves in the shoes of Sylvia he had told them that *"*negligence means the failure to use ordinary care . . . not just carelessness" and "ordinary care means that degree of care that would be used by a person of ordinary prudence under *the same or similar circumstances*." (Emphasis added). That is, he first told the jury that liability was dependent upon what a *reasonable person* would have done under the *same circumstances* and then he invited the jurors to place themselves within the car to experience those all important circumstances. That this is what he intended is exemplified by 1) his stating "[l]et's put yourself in these *same circumstances,*" 2) then describing for the jury those circumstances as they unfolded, and then 3) asking "[i]s that negligence" and "[i]s that failing to use ordinary care?"

The same is true when he later urged the jury to "[p]ut yourself in John's position," that is, the position of the driver of the other vehicle. After describing the circumstances encountered by John and the obligations imposed on an ordinary prudent person, he opined that John's response did not evince ordinary prudence. Simply put, he was again asking the jurors, who in his view must devine what an ordinary prudent person would have done under the circumstances, to view those circumstances and decide whether the response exhibited by John comported with ordinary prudence.

6

In sum and when viewed in context, counsel was asking the jurors not to assess liability as a litigant with an interest in the outcome but as a reasonable person witnessing the events unfold. That was permissible since final argument may consist of attempt to structure the evidence in a way "mak[ing] the law contained in the charge applicable to the facts of the case." *Deviney v. McLendon*, *supra*. Consequently, the trial court's decision comported with controlling authority and evinced a legitimate exercise of discretion.

Accordingly, we affirm the judgment.

Brian Quinn
Justice

Publish.

7