

NUMBER 13-07-00707-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SERVICE CORPORATION INTERNATIONAL
AND SCI TEXAS FUNERAL SERVICES, INC.,
D/B/A MONT META MEMORIAL PARK,                     Appellants,

v.

JUANITA G. GUERRA, JULIE ANN RAMIREZ,
GRACIE LITTLE, AND MARY ESTHER MARTINEZ,           Appellees.

On appeal from the 404th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides**
**Memorandum Opinion by Justice Rodriguez**

Appellants Service Corporation International (SCI) and SCI Texas Funeral Services,

Inc., d/b/a Mont Meta Memorial Park (Mont Meta or SCI Texas) challenge the jury's verdict

in favor of appellees Juanita G. Guerra and her daughters, Julie Ann Ramirez, Gracie

Little, and Mary Esther Martinez (collectively, the Guerras). The jury found appellants liable for trespass, negligence, and intentional infliction of emotion distress for disturbing the grave of the Guerras' deceased husband and father and, subsequently, misrepresenting the situation to the family; the jury awarded $2.3 million in mental anguish damages and $4 million in exemplary damages. By seven issues, appellants complain that: (1) the evidence of liability and actual damages is legally and factually insufficient; (2) the amount of actual damages awarded is excessive; (3) the award of exemplary damages was tainted by the admission of irrelevant and prejudicial evidence and the amount was excessive; (4) the jury charge authorizing exemplary damages in excess of the cap was erroneous; (5) the jury's verdict was influenced by improper jury argument; and (6) cumulative error should result in a new trial.[1] We affirm, in part; modify the judgment, in part; and affirm the judgment as modified.

## I. BACKGROUND

Marcos Guerra, husband and father of appellees, died in October 2001 after a brief but sudden illness. On the Friday before their father's Monday funeral, the Guerra daughters went to Mont Meta, a cemetery in San Benito, Texas, owned and operated by SCI Texas,[2] to make arrangements for the burial. Appellees originally planned to use a plot owned by another family member, which was to be quit-claimed to the Guerras. However, appellees decided after their first meeting at Mont Meta that they, instead, wished to buy two adjacent plots so that Mrs. Guerra could be buried beside her husband.

---

[1] We have rearranged appellants' issues to effectively address them in order of consequence to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

[2] SCI Texas is an indirect, wholly-owned subsidiary of SCI. SCI owns the company that owns all the shares of SCI Texas. The record is unclear as to the identity of the intermediary company.

A Mont Meta sales employee consulted the cemetery's burial plot books and determined that spaces 5 and 5x in the older section of the cemetery were available for the Guerras' purchase. As part of the sales process mandated by SCI Texas policy, another Mont Meta employee then performed a "blind check" of the plot records to ensure the spaces offered to the Guerras were available for sale;[3] the employee who performed the blind check confirmed the availability of the spaces.

In fact, space 5 was not available because it had been previously sold to another family. The sales employee who performed the initial review of the records overlooked two ditto marks in the book that indicated that space 5 was already owned by the Bricelda Martinez family. The employee who performed the blind check noted the ditto marks and approached her manager at Mont Meta, who assured the employee that everything was in order and who then erroneously marked in the book that space 5 had been quit-claimed to the Guerras by Bricelda Martinez. The employees involved with the sale of the burial plot to the Guerras testified at trial that they had doubts regarding the status of the Guerra file prior to the burial, but Mont Meta proceeded to bury Marcos Guerra on the following Monday notwithstanding the employees' uncertainties.

A few days after the burial, Jaye Gaspard, general manager of Mont Meta, discovered the mistake. He called the Guerras to inform them of the mistaken sale and asked whether they would be amenable to moving their father's grave. The Guerras did not agree to move the grave. Despite the family's refusal, the Mont Meta grounds crew uncovered Mr. Guerra's coffin and moved it twelve to eighteen inches out of space 5 and

---

[3] The required "blind check" involved an employee other than the employee who initially checked the plot books to review cemetery records and the sale documents to verify that the plot had not been previously sold, that no one was already buried in the spot, or that no other circumstance would preclude the sale of the spot.

into space 5x. The record is unclear as to the exact date the coffin was moved. Gaspard then sent a letter to the Guerras informing them that the situation had been resolved; the letter did not state that Mr. Guerra's remains had been moved.

Several months after the burial, in early 2002, appellants visited the grave of their father and noticed that the dirt above the grave had been disturbed. The Guerras questioned Mont Meta about the freshly-dug earth, and Gaspard responded with a letter stating that Mont Meta was resodding the cemetery in preparation for the holidays and because of drought conditions. Doubting the veracity of the letter, the Guerras performed their own probe of the grave site and discovered that the coffin had been moved. As a result, in April 2002, the Guerras filed a complaint with the Texas Funeral Commission accusing Mont Meta of moving Mr. Guerra's grave without their permission. Counsel for SCI drafted a letter responding to the Guerra's complaint. Mont Meta's new general manager signed the letter and sent it to the funeral commission.[4] The funeral commission did not find any wrongdoing by Mont Meta. However, in November 2002, Mont Meta sent a letter to the Guerras admitting it had moved Mr. Guerra's grave. The Guerras then exhumed Mr. Guerra's remains; the Guerra daughters testified that the family made this decision because they were uncertain that Mont Meta was being truthful about anything it said regarding their father's grave.

The Guerras filed suit against SCI and SCI Texas alleging causes of action for negligence, fraud, trespass, and intentional infliction of emotional distress. The case was

_____

[4] Gaspard died sometime between the moving of Mr. Guerra's coffin and the Guerra's complaint to the funeral commission. The Guerras contend Gaspard's death was a suicide but the record is unclear as to the cause of his death.

4

tried before a jury, which returned a verdict in favor of the Guerras finding SCI seventy percent liable and SCI Texas thirty percent liable for negligence, trespass, and intentional infliction of emotional distress. The jury awarded $2.3 million in mental anguish damages—$2 million to Mrs. Guerra and $100,000 to each daughter. As exemplary damages, the jury awarded $3 million against SCI and $1 million against SCI Texas— seventy percent to Mrs. Guerra and ten percent to each daughter. This appeal ensued.

## II. DISCUSSION

### A. Sufficiency of the Evidence

By three issues,[5] appellants contend that the evidence was legally and factually insufficient to support the jury's verdict on liability and actual damages.

#### 1. Standard of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). In determining whether there is legally sufficient evidence

---

[5] Appellants contend, in part, by their third issue that the evidence was insufficient to establish that SCI, the corporate parent of SCI Texas, was liable for the Guerras' injuries. Appellants contend that SCI is a separate legal entity from SCI Texas and that the relationship between the companies does not make SCI automatically liable for the actions of SCI Texas. *See generally Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374-75 (Tex. 1984) (holding that a court will generally not "disregard the corporate fiction and hold a corporation liable for the obligations of its subsidiary"). However, the Guerras never alleged that SCI Texas was the alter ego of SCI. Rather, the Guerras maintained throughout the case that SCI, in addition to SCI Texas, was directly responsible for the injuries allegedly suffered by the Guerras. Therefore, we find the alter ego legal principles cited by appellants inapposite and will, instead, review the evidence in light of SCI's alleged direct involvement in the events giving rise to this case. We overrule appellants' third issue to the extent it argues that the Guerras were required to pierce the corporate veil and prove that SCI Texas is the alter ego of SCI.

5

to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not.  *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).  When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.  *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

In reviewing an appellant's factual sufficiency challenge to an adverse jury finding on which the other party had the burden of proof, we will consider, weigh, and examine all of the evidence in the record, both in support of and contrary to the finding.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).  We will set aside the jury's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.  *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In the context of a jury trial, the sufficiency of the evidence is reviewed in light of the charge submitted if no objection is made to the charge.  *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001).  However, when a party properly objects to a jury question, we review the

sufficiency of the evidence in light of the charge the trial court should have submitted. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2003).

## 2. Trespass, Negligence, and Intentional Infliction of Emotional Distress

In their third and fourth issues, appellants argue that the evidence was insufficient to establish that appellants committed trespass, negligence, and intentional infliction of emotional distress.[6]

Neither party objected to the jury charge on trespass; we must, therefore, review the evidence in light of the charge. *See Romero*, 166 S.W.3d at 221. Trespass was defined in the charge, in relevant part, as follows:

> And furthermore, a "trespass" occurs when one intentionally commits an act, or when one intentionally fails to act, when that act or failure to act violates a property right, or would be practically certain to have that effect, although the actor may not know that the act he intends to commit or that his failure to act is such a violation.

The family of a deceased person has a legally cognizable right to bury their deceased and preserve his remains. *Love v. Aetna Cas. & Sur. Co.*, 99 S.W.2d 646, 650 (Tex. Civ. App.–Beaumont 1936), *aff'd on other grounds*, 132 Tex. 280, 121 S.W.2d 986 (Tex. 1938). Texas courts have recognized this right as a property right, *see, e.g.*, *Burnett v. Surratt*, 67 S.W.2d 1041, 1042 (Tex. Civ. App.–Dallas 1934, writ ref'd), and have held that disturbing the remains of the deceased family member constitutes a trespass claim

---

[6] Citing *Crown Life Insurance Company v. Casteel*, appellants also argue that because the jury charge included only one damages question, liability is conclusively negated if one cause of action is disproved. 22 S.W.3d 378, 387-88 (Tex. 2000). However, we do not reach this sub-issue on appeal because appellants did not raise it before the trial court and, thus, failed to preserve it for our review. *See* TEX. R. APP. P. 33.1.

With regard to their contentions that the evidence did not support the jury's verdict regarding negligence and intentional infliction of emotional distress, we need not reach this sub-issue because the damages awarded to the Guerras are supported by the jury's verdict on trespass. Thus, our determination regarding the evidence supporting the trespass verdict disposes of the issue. *See* TEX. R. APP. P. 47.1.

7

for which damages may be maintained. *Terrill v. Harbin*, 376 S.W.2d 945, 947 (Tex. Civ. App.–Eastland 1964, writ dism'd).

The jury was presented with evidence that Gaspard, general manager of Mont Meta, moved the remains of Mr. Guerra without appellees' permission. The evidence showed that Gaspard was employed by SCI Texas, the direct owner of Mont Meta. There was also evidence that Gaspard was paid by SCI; Gaspard's paychecks contained the SCI logo and did not clearly differentiate between SCI and SCI Texas. The jury also heard testimony from Abel Martinez, supervisor of the grounds crew at Mont Meta, who stated generally that he was employed by the "SCI company." Martinez confirmed that he and at least one other member of the grounds crew disinterred Mr. Guerra's grave per instructions from Gaspard.

We conclude that there was more than a scintilla of evidence to establish that SCI and SCI Texas committed trespass when its managerial employees intentionally disturbed the remains of Mr. Guerra. *See Cazarez*, 937 S.W.2d at 450; *Terrill*, 376 S.W.2d at 947. Under the jury charge, the Guerras were not required to prove that appellants knew their actions violated appellees' rights; rather, it is sufficient that the Guerras showed an intentional act by appellants that violated their legal right to control the burial and remains of Mr. Guerra. *See Love*, 99 S.W.2d at 650. The evidence was, therefore, legally sufficient. Moreover, we conclude that the evidence was factually sufficient because the jury's finding was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. Appellants' third and fourth issues are overruled.

### 3. Mental Anguish Damages

By their first issue, appellants complain that the evidence is insufficient to support the Guerras' recovery of mental anguish damages. Specifically, appellants argue that there was insufficient evidence of the nature, duration, and severity of the Guerras' harm.

At trial, no party objected to the mental anguish jury charge, so we are guided by the law as set out in the language of the charge. *See Romero*, 166 S.W.3d at 221. The jury charge defined mental anguish as follows:

> "Mental anguish" means emotional pain, torment and suffering. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.[7]

Generally, "direct evidence of the nature, duration, and severity" of the plaintiff's mental anguish "establishing a substantial disruption in the plaintiff's daily routine" is necessary to survive an evidentiary challenge. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995); *Krishnan v. Ramirez*, 42 S.W.3d 205, 216 (Tex. App.–Corpus Christi 2001, pet. denied). The evidence may come from the plaintiff's own testimony or the testimony of third parties, so long as adequate details are provided to the fact finder to assess the degree of mental anguish. *Parkway*, 901 S.W.2d at 444. However, this direct evidence is not necessarily required in all cases; certain types of particularly shocking or disturbing "injuries have been found sufficient to support an inference that the injury was accompanied by mental anguish." *Id.* at 444-45. Qualifying disturbing events usually include threats to "physical safety or reputation" or the "death of, or serious injury to, a

---

[7] This language comports with the case-law definition of mental anguish. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995).

9

family member."[8]  *Id.* at 445.  Texas courts have recognized one such disturbing event in particular—the mishandling of a corpse.  *See id.* at 443 (citing *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904, 907 (Tex. Civ. App.–Houston [14th Dist.] 1969, writ ref'd n.r.e.)).

Here, Mrs. Guerra testified that "[i]t's been devastating whenever I find out the grave had been tampered [sic].  I have been through a lot of stress.  I couldn't sleep at night . . . . I suffer my stomach [sic], I have a lot of burning . . . just a lot of what I feel is burning, headaches."  Mrs. Guerra stated that she had been prescribed Paxil by her doctor for anxiety and depression.  She stated that she was afraid that there would not be room in their plot to bury her next to her husband and worried that Mont Meta might move her remains after she dies.  Gracie Little, one of the Guerra daughters, also testified that her mother had suffered physically, emotionally, and mentally; she confirmed that her mother is constantly worried and is taking Paxil for her anxiety.

With regard to their own mental anguish, the Guerra daughters testified as follows:

Julie Ramirez:     This has been the hardest thing that I have had to go through with my family.  I have lots of nights that I don't sleep just thinking. . . . I always imagine that it was done [sic], I never think it was my dad and how they had moved him and what he must have felt.  This was a total disrespect for him.  I had a conversation with my dad several years ago outside my patio and I will tell you about it because I want you to know.  When he was little, his family was very poor and they moved around a lot. . . . He had no control over that.  That was something that happened and here after we bury him, he is still moved out of his control [sic].  And that's been very difficult.  We had to go make a decision to

---

[8] Compare *Wackenhut Corrections Corporation v. de la Rosa*, in which we held that the plaintiffs in a wrongful death case involving a close family member need not present direct evidence of their anguish and establish that they had suffered a substantial disruption in their daily routines, reasoning that evidence of a close familial relationship was sufficient to create an inference of mental anguish. No. 13-06-00692-CV, 2009 WL 866791, at *34 (Tex. App.–Corpus Christi Apr. 2, 2009, no pet. h.).

|                    | exhume, to find dad if he was there [sic] and that was hard. We didn't want to go through that again. |
| --- | --- |
| Esther Martinez: | When my dad passed away, I was holding his hand. He passed away holding my hand and I knew that I had to go on with my life because that's part of life. You know, go on. But when we got down to SCI to my dad [sic], it's not part of my life. I didn't have to accept that and I did not accept it and I won't accept it. |
| Gracie Little: | It's the same thing as my mother and my sisters. We're not at peace. We're always wondering. You know, we were always wondering where our father was. It was very hard to hear how this company stole our father from his grave and moved him. That was hard. And I pray none of you have to go through this. |

We conclude that appellees presented direct evidence of Mrs. Guerra's mental anguish. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797-98 (Tex. 2006) (holding that plaintiff's testimony that he was depressed, humiliated, unable to sleep, and suffered from headaches and nightmares was sufficient); *Bentley v. Bunton*, 94 S.W.3d 561, 606-07 (Tex. 2002) (reasoning that the evidence of mental anguish was sufficient where the plaintiff's family was disrupted and he lost sleep and was depressed). The evidence shows Mrs. Guerra was suffering from insomnia and stomach pains. She was also on medication for depression and anxiety. Her injuries were further confirmed by the testimony of her daughter. *See Parkway*, 901 S.W.2d at 444 (holding that mental anguish can be established by the testimony of third parties). And although the testimony of the Guerra daughters did not show they suffered the same physical and severe emotional injuries as their mother, we conclude that the nature of the wrong committed by appellants—the mishandling of Mr. Guerra's remains—combined with the experiences described in the

11

testimony are sufficient to create an inference that the Guerra daughters suffered mental anguish. *See id.*

In sum, there was more than a mere scintilla of evidence that appellees suffered mental anguish, and we conclude that the evidence was, therefore, legally sufficient. *See Cazarez*, 937 S.W.2d at 450. Moreover, the jury's verdict regarding mental anguish damages was not so contrary to the evidence as to render it clearly wrong or manifestly unjust; thus the evidence was also factually sufficient. *See Cain*, 709 S.W.2d at 176. Appellants' first issue is overruled to the extent it challenges the sufficiency of the evidence supporting recovery of mental anguish damages.

## B. Excessive Actual Damages

By their first issue, appellants also argue that the amount of mental anguish damages awarded was excessive. "An allegation that damages are excessive invokes the same standard of review as any factual sufficiency challenge." *Krishnan*, 42 S.W.3d at 218. Again, the parties here did not object to the mental anguish jury charge, so the damages awarded must be an amount that would fairly and reasonably compensate the Guerras in light of the language of the charge, as was described previously. *Id.* (citing *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)). "The jury has the discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for the jury's calculation," and we will defer to the jury's determination in such a situation. *W.L. Lindemann Operating Co., Inc. v. Strange*, 256 S.W.3d 766, 787 (Tex. App.–Fort Worth 2008, pet. denied).

12

Appellants offer virtually no explanation as to why the mental anguish damages in this case were excessive, instead making the bare assertion that the jury "pick[ed] a number and put it in the blank."[9] However, it is evident that the jury made a rational determination regarding damages in this case. *See id.* First, as previously detailed, there was ample evidence that the Guerras suffered great mental anguish as a result of appellants' mishandling of Mr. Guerra's remains and subsequent misrepresentations such that the jury acted fairly and reasonably in awarding them significant damages. *See Krishnan*, 42 S.W.3d at 218. Second, the fact that the jury awarded the Guerra daughters substantially less in damages than their mother suggests that the jurors engaged in a thoughtful analysis of the testimony and other evidence. *See Service Corp. Int'l v. Aragon*, 268 S.W.3d 112, 121-22 (Tex. App.–Eastland 2008, pet. filed) (affirming the amount of mental anguish damages awarded, in part, because the jury clearly differentiated between the harm suffered by the various plaintiffs). We cannot say, therefore, that the amount of damages awarded for mental anguish is so contrary to the overwhelming weight of the evidence as to be manifestly unjust. *See Krishnan*, 42 S.W.3d at 218. Appellants' first issue is overruled in so far as it challenges the alleged excessiveness of the mental anguish damages.

## C. Exemplary Damages

In two issues, appellants challenge the exemplary damages awarded to the Guerras. First, appellants contest the trial court's admission of certain evidence that

---

[9] Appellants cite *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) for this quoted characterization.

allegedly affected the exemplary damages findings.[10]  Second, appellants allege charge

error, challenging question 11 in the jury charge, which lays the predicate to justify

damages in excess of the statutory cap.[11]

### 1. Admission of Evidence

By their fifth issue, appellants contend that the trial court erred in admitting evidence

regarding (1) alleged other bad acts by appellants dissimilar to the facts of this case, (2)

the good deeds the Guerras intend to perform with the damages award, and (3) the

general wealth of SCI, as opposed to its net worth.  Evidentiary rulings are committed to

the sound discretion of the trial court.  *Owens-Corning Fiberglass Corp. v. Malone*, 972

S.W.2d 35, 43 (Tex. 1998).  A trial court abuses its discretion when it rules without regard

to any guiding rules or principles.  *Id.*  Trial courts may exclude otherwise relevant evidence

if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury.  TEX. R. EVID. 403.  We must uphold the

trial court's ruling if there is any legitimate basis for it.  *Malone*, 972 S.W.2d at 43.

Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the

error probably caused the rendition of an improper judgment; specifically, a trial court's

ruling on evidence is not usually reversible unless the appellant can demonstrate that the

whole case turned on the particular evidence admitted or excluded.  TEX. R. APP. P.

44.1(a); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

---

[10] We note that appellants do not link their complaint regarding the admission of evidence to any of the theories of liability, instead opining generally throughout the issue that the evidence was inflammatory and prejudiced the "verdict."  *See* TEX. R. APP. P. 38.1(i) (requiring the brief to contain a "clear and concise argument for the contentions made").  Appellants do, however, directly challenge the effect of the evidence on the jury's award of exemplary damages, and as such, we will construe appellants' fifth issue as an argument against admission of certain evidence with regard to exemplary damages. *See* TEX. R. APP. P. 47.1.

[11] Appellants do not challenge whether the Guerras were entitled to exemplary damages.

14

### a. "Other Wrongs" Evidence

Appellants complain that the trial court abused its discretion in admitting evidence of "other wrongs" that allegedly occurred at other cemeteries owned by appellants, including wrongful burials, double sales of plots, desecration of remains, and other alleged bad acts related to burials and the treatment of graves. The Guerras' evidence included testimony from persons whose families had filed lawsuits against appellants in connection with incidents at various cemeteries in the Rio Grande Valley and other parts of Texas; the Guerras also questioned appellants' managerial employees regarding a class action filed in Florida alleging extensive wrongdoing at appellants' cemeteries in that state. The record contains exhibits related to those lawsuits. Appellants argue these incidents were dissimilar to the facts of this case and, because of the dissimilarity, were irrelevant and inadmissible. Alternatively, appellants contend that even if the incidents were relevant, the probative value of the evidence is substantially outweighed by the prejudicial, inflammatory nature of the evidence.

The general rule in Texas is that evidence of other acts by a party with persons not parties to the lawsuit are irrelevant, immaterial, unfairly prejudicial, and therefore, inadmissible. *Sturges v. Wal-Mart Stores, Inc.*, 39 S.W.3d 608, 613 (Tex. App.–Beaumont 1998), *rev'd on other grounds*, 52 S.W.3d 711 (Tex. 2001). However, when a party's intent is material, other acts of that same party may be introduced if they are so connected with the case at hand such that all of the acts may be considered as parts of a system, scheme, or plan. *Id.* (citing *Tex. Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 881 (Tex. App.–Corpus Christi 1988, writ denied)). In particular, "'[o]ther acts' evidence is admissible

15

both to show willful intent in support of exemplary damages, and to show a plan or scheme." *Id.* at 614 (citation omitted). For example, this exception has been used specifically to admit evidence of prior lawsuits against a defendant who argues that its conduct in the case at hand is an isolated incident. *See id.*

Our review of the pretrial and trial records reveals that the court took great care in considering the other lawsuits offered as evidence by the Guerras for similarity to the facts of this case and permitted the admission of only those cases that involved the double sale of a plot, burying a body in the wrong space, or moving a body without the family's permission. Moreover, it is plain from the record and appellants' briefing to this Court that they have, throughout this proceeding, attempted to portray the Guerras' case as an isolated incident caused by the rogue actions of one employee, Gaspard. Therefore, we conclude that the evidence of other bad acts committed by appellants falls within the exception to the general rule that such evidence is inadmissible—it shows a pattern of wrongful conduct, is relevant to the issue of exemplary damages, and the trial court did not abuse its discretion in admitting the evidence. Appellants' fifth issue is overruled in so far as it relates to the "other wrongs" evidence admitted by the trial court. *See id.* at 613-14; *Malone*, 972 S.W.2d at 43.

### b. Intended Use of the Damages

Appellants also argue by their fifth issue that the trial court erred in admitting testimony by the Guerras regarding their intended use for any damages awarded.[12] However, appellants cite no authority binding on this Court in support of this argument, and

---

[12] The Guerras testified at trial that they would use the money they received from a favorable verdict to appoint a trustee to monitor and police Mont Meta and other cemeteries in the Rio Grande Valley.

we are not persuaded that this evidence is irrelevant or unduly prejudicial.  *See* TEX. R.

EVID. 401 (stating that evidence is relevant that has "*any tendency* to make the existence

of any fact . . . more or less probable than it would be without the evidence.") (emphasis

added).  The trial court did not abuse its discretion, and appellant's fifth issue is overruled

to the extent it challenges the admission of this evidence.

### c.  General Wealth of SCI

Finally, appellants complain by their fifth issue that the trial court erroneously

admitted evidence of SCI's assets and gross income; appellants challenge the admission

of SCI's annual reports and contend that, in argument, the Guerras referenced SCI's

wealth to create prejudice.  Assuming without deciding that the trial court did err in

admitting this evidence, we nonetheless conclude that it did not cause the rendition of an

improper judgment.  *See* TEX. R. APP. 44.1.  In addition to the evidence noted by

appellants, the Guerras also introduced evidence of SCI's net worth, between $1.5 billion

and $2 billion, which is clearly admissible,[13] and, in fact, our review of the record revealed

that it was this dollar amount that the Guerras emphasized in their argument to the jury.

In light of this, we are not persuaded that the jury's verdict turned on the admission of

evidence of SCI's general wealth.  *See Interstate Northborough P'ship*, 66 S.W.3d at 220.

We conclude that the trial court did not abuse its discretion; appellants' fifth issue is

overruled in so far as it challenges the admission of SCI's assets and gross income.

### 2.  Charge Error

By their second issue, appellants allege charge error in jury question 11.  Question

11 reads as follows:  "Did either of the Defendants conceal or otherwise impair the verity

---

[13] *See Southland Corp. v. Burnett*, 790 S.W.2d 828, 830 (Tex. App.–El Paso 1990, no writ) (citing *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988)).

17

of a writing for which the law provides public recording or filing with intent to defraud or harm another?" Appellants argue that question 11 does not accurately set out the law because it does not inform the jury that the fraud allegedly committed by appellants in their letter to the Texas Funeral Commission must have caused the Guerras' injuries. We agree.

We review a jury charge for error under an abuse of discretion standard. *Krishnan*, 42 S.W.3d at 220 (citing *Tex. Dep't of Human Serv. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990)). A trial court abuses its discretion in submitting certain language to the jury if it does so arbitrarily or unreasonably or without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). However, error in the charge is reversible only if it harmed the appellant, i.e. probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a); *Boatland, Inc. v. Bailey*, 609 S.W.2d 743, 749-50 (Tex. 1980).

In a case where, as here, there are no economic damages, exemplary damages are generally capped at "an amount equal to any non-economic damages, not to exceed $750,000." TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b)(1)(B) (Vernon 2008). The cap "does not apply to a cause of action against a defendant from whom a plaintiff seeks recovery of exemplary damages based on conduct described as a felony" under certain sections of the penal code. *Id.* § 41.008(c). Appellees argue that, under the law, they need not connect appellants' alleged felonious conduct to their injuries. However, the plain language of the statute does not support this proposition. We conclude the statute clearly mandates that the Guerras' injuries must have resulted from the fraud allegedly committed by appellants in their response to the funeral commission. *See id.* (stating that the statutory cap on exemplary damages "does not apply to a cause of action . . . seek[ing]

18

recovery of exemplary damages *based on* conduct described as a felony") (emphasis added); *see, e.g.*, *Bennett v. Reynolds*, 242 S.W.3d 866, (Tex. App.–Austin 2007, pet. granted) (upholding exemplary damages award in excess of statutory cap where defendant's felony theft gave rise to plaintiff's action for conversion); *Mission Res., Inc. v. Garza Energy Trust*, 166 S.W.3d 301, 315-16 (Tex. App.–Corpus Christi 2005), *rev'd on other grounds*, 268 S.W.3d 1 (Tex. 2008) (affirming exemplary damages award in excess of cap where defendant's felony theft was the basis of plaintiff's claims for subsurface trespass, breach of duty of good faith pooling, and breach of implied covenants to develop, market, and protect against drainage); *Myers v. Walker*, 61 S.W.3d 722, 732 (Tex. App.–Eastland 2001, pet. denied) (allowing exemplary damages in excess of cap where defendant's fraud induced plaintiff into signing settlement agreement from which plaintiff's cause of action for breach arose).

Question 11 is erroneous because it did not adequately inquire about the conduct necessary to bust the cap on exemplary damages. While it is true that appellants would have committed a qualifying felony if they intentionally impaired the verity of a publicly-recorded writing, *see* TEX. PENAL CODE ANN. § 32.47(a) (Vernon 2003), the Guerras' claims, nonetheless, would have fallen within the statutory cap unless their damages were based on that felonious conduct. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(c). We, therefore, conclude that the trial court acted without reference to guiding rules and principles and abused its discretion in submitting question 11 to the jury without language requiring the fact finders to find that the alleged fraud caused the Guerras' injuries. *See Downer*, 701 S.W.2d at 242. Moreover, we conclude that the court's error in submitting the instruction harmed appellants. *See* TEX. R. APP. P. 44.1(a). Had the jury not answered

19

"yes" to question 11, the Guerras would have been unable to recover damages in excess of the statutory cap; in other words, absent the erroneous charge, the Guerras' exemplary damages would have been limited to $750,000 from each defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b)(1)(B); *see Wackenhut Corrections Corporation v. de la Rosa*, No. 13-06-00692-CV, 2009 WL 866791, at *48 (Tex. App.–Corpus Christi Apr. 2, 2009, no pet. h.) (citing *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 752 (Tex. App.– Houston [14th Dist.] 1998, no pet.)) (applying cap on a per-defendant basis). Appellants' second issue is sustained.[14]

## E. Improper Jury Argument

In their sixth issue, appellants contend that the jury's verdict was influenced by improper jury argument. Specifically, appellants argue that the trial court erred in allowing counsel for the Guerras to make an improper appeal to the jury to consider the case as if they were standing in the Guerras' shoes. To reverse the trial court's judgment based on improper jury argument, appellants must demonstrate that: (1) improper argument was made; (2) improper argument was not invited or provoked; (3) error was preserved by the proper trial predicate; (4) error was not curable; (5) argument, by its nature, degree, and extent, constituted reversible harmful error; and (6) argument probably affected a material

---

[14] Appellants also contend by their second issue that the evidence is insufficient to prove that they engaged in the felonious conduct about which the jury was asked in question 11. Because we have concluded that question 11 is legally erroneous, however, we do not reach this sub-issue on appeal. *See* TEX. R. APP. P. 47.1.

In their second issue, appellants then summarily assert that the amount of exemplary damages awarded was also unsupported by the evidence. However, we conclude this contention was inadequately briefed. Without argument or authority, appellants' bare assertions regarding the evidentiary support for the amount of damages do not suffice; the argument is thus waived on appeal. *See* TEX. R. CIV. P. 38.1(i).

finding in light of the entire record. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979).

Appellants complain of the following excerpt from the Guerras' jury argument:

So you're going to have to come to the decision how to answer [question] 8 [regarding exemplary damages]. Do you believe that our society should accept this, or should we exercise the only thing that we can do as individuals in our community and take the only thing that SCI values from them, because if we don't, if you don't [sic] I promise you it will just keep on happening. It will just keep on happening. And then they'll [sic] be more families like that and *it could be you. It could be your family. It's happened in this county before. It's happened in the Valley before. It could be your family, and then if it was your family and when you're back there deliberating you think wow*. . . .

(emphasis added). The quoted excerpt was the only instance in which the Guerras' counsel suggested the jury view the case from this perspective.

While we acknowledge that it is generally improper to ask jury members to consider a case by putting themselves in the place of the plaintiff, *Fambrough v. Wagley*, 169 S.W.2d 478, 482 (Tex. 1943), we will not consider the above comment in isolation from the remainder of the argument. *See Sanchez v. Espinoza*, 60 S.W.3d 392, 396 (Tex. App.–Amarillo 2001, pet. denied) (citing *Williams v. State*, 826 S.W.2d 783, 785-86 (Tex. App.–Houston [14th Dist.] 1992, pet. ref'd)). Rather, examined in context, the complained-of language can be viewed as part of the Guerras' plea for exemplary damages. In fact, the argument of counsel that followed the quoted excerpt reminds the jury of the numerous other incidents of wrongdoing by appellants and asks them to consider what the appropriate consequences should be for a "repeat offender." The purpose of exemplary damages is to punish wrongdoing and transgressions of societal standards, *see State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 416 (2003)

21

(stating that punitive damages "are aimed at deterrence and retribution), and counsel's argument could be viewed as an attempt to apply that law to the facts of the case. *See Sanchez*, 60 S.W.3d at 396. Against that backdrop, we cannot conclude that counsel for the Guerras made an improper appeal to the jurors. Moreover, because it occurred only once during counsel's argument and encompassed only seven lines of a nearly fifteen page argument, the nature, degree, and extent of the allegedly improper appeal does not constitute harmful, reversible error. *See Reese*, 584 S.W.2d at 839. Appellants' sixth issue is overruled.

### E. Cumulative Error

By their seventh issue, appellants ask this Court to reverse the verdict and remand the case for new trial because of cumulative error at trial. However, in their brief, appellants provide no argument or citation to the record or any applicable authority supporting this issue. We conclude, therefore, that this issue has been inadequately briefed and, thus, waived by appellants. *See* TEX. R. APP. P. 38.1(i). Appellants' seventh issue is overruled.

### III. CONCLUSION

The portion of the trial court's judgment regarding liability and actual damages is affirmed. However, in light of the charge error regarding the predicate conduct necessary to overcome the statutory cap, we modify the portion of the judgment awarding exemplary damages in excess of the statutory cap. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(c). The judgment is modified to reflect an exemplary damages award of $750,000 against each appellant— for a total of $1.5 million—which shall be apportioned among the

22

appellees pursuant to the jury's findings: seventy percent to Mrs. Guerra and ten percent to each Guerra daughter. *See id.* § 41.008(b); TEX. R. APP. P. 43.2(b); *Seminole Pipeline Co.*, 979 S.W.2d at 752. We affirm the judgment as modified.[15] *See* TEX. R. APP. P. 43.2(b).

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 8th day of October, 2009.

---

[15] In their second issue, appellants argue that the exemplary damages award was excessive. Citing *State Farm Mutual Automobile Insurance Company v. Campbell*, appellants appear to challenge the award on the basis of federal due process. 538 U.S. 408 (2003). However, appellants' challenge pertains only to the $4 million of exemplary damages awarded by the jury, not to the modified award of $750,000 against each defendant affirmed by this opinion. We, therefore, do not reach this issue on appeal because an award that falls within the statutory cap is generally presumed to comport with due process. *See Tony Gullo Motors I, Inc. v. Chapa*, 212 S.W.3d 299, 318 (Tex. 2006).

23