**AFFIRM; and Opinion Filed January 30, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01171-CV

## IN RE THE COMMITMENT OF DONALD RAY JOHNSON

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CV-16-70007**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Whitehill
Opinion by Justice Whitehill

A jury found that appellant Donald Ray Johnson is a sexually violent predator. The trial court accordingly entered judgment civilly committing him for treatment and supervision under Texas Health and Safety Code Chapter 841.

Johnson appeals, raising four issues: (i) legal insufficiency of the evidence, (ii) factual insufficiency of the evidence, (iii) erroneous admission of hearsay evidence, and (iv) improper closing argument.

We overrule Johnson's issues, concluding that: (i) the evidence supported the jury's finding that Johnson suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, (ii) admitting certain hearsay testimony by the State's expert was not an abuse of discretion and, alternatively, was harmless if erroneous, and (iii) the State's closing

argument that Johnson called no witnesses to testify that he does not have a behavioral abnormality was not improper. Accordingly, we affirm.

## I. BACKGROUND

In October 2016, the State of Texas filed a petition to have Johnson civilly committed as a sexually violent predator pursuant to Texas Health and Safety Code Chapter 841. Johnson was then in prison serving three concurrent twenty-five-year sentences (imposed in 1994) for sex crimes involving three different minors. He also had three other prior convictions for sex crimes involving minors. He was scheduled to parole out on June 12, 2017.

The case was tried before a jury. The State proved up the six convictions mentioned above. Johnson testified about those crimes and also about a seventh sex crime he committed as a juvenile. Specifically, in 1975, when he was fourteen years old, he sexually assaulted a girl who was about six years old. The victim was a stranger to him whom he encountered on the street one day when he was skipping school and had been sniffing gasoline. He was sentenced to six months at the Texas Youth Commission for that offense, but he wound up staying there for two years because of fighting.

We briefly summarize Johnson's six subsequent sex crimes as follows:

- In or about 1980, when Johnson was nineteen, he sexually assaulted his girlfriend's daughter, who was about nine or ten. He rubbed his penis against her vagina. He testified that he couldn't control himself.

- In 1983, he committed a sexual offense against a six or seven year-old girl who was the daughter of a woman who was Johnson's friend. Johnson's testimony about this crime was brief, but he said that he knew he was going to sexually assault her when he took her to his house.

- In 1985, two months after paroling out from his previous sentence, he committed attempted sexual assault against his younger sister, who was fifteen or sixteen. Johnson insisted he did not remember any details about that crime. He was sentenced to five years' imprisonment for this offense but got out of prison in 1987.

- In 1993, he sexually assaulted two of his wife's female relatives, who were seven and nine, by touching their vaginas. His two stepsons were present

–2–

at the time. He testified that he knew it was wrong but he couldn't control himself.

- Finally, eight months after the 1993 crimes, Johnson sexually assaulted a neighbor's daughter, who was eight or nine years old. He knew the daughter before he assaulted her, and he found her attractive and fantasized about having sex with her. When the opportunity arose, he assaulted her by having vaginal sex with her.

The only trial witness besides Johnson was the State's expert witness, Dr. Randall Price. Price testified, among other things, that Johnson has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Johnson did not object to the charge's substance, and the jury answered "yes" to the jury charge's sole question: "Do you find beyond a reasonable doubt that Donald Ray Johnson is a sexually violent predator?"

The trial judge signed a commitment order and a final judgment.

Johnson timely appealed.

## II. ANALYSIS

**A.    Issues One and Two:  Was the evidence supporting the jury's finding legally and factually insufficient?**

### 1.    Summary and Error Preservation

Johnson's first issue challenges the evidence's legal sufficiency to support the jury finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. He preserved this issue by making a directed verdict motion at trial.

Johnson's second issue challenges the evidence's factual sufficiency to support the same jury finding. He preserved this issue by new trial motion.

We overrule both issues for the following reasons.

### 2.    Applicable Law and Standard of Review

In a suit to commit a person as a sexually violent predator, the State must prove beyond a reasonable doubt that the person (i) is a "repeat sexually violent offender" and (ii) "suffers from a

behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE §§ 841.003(a), 841.062(a); *see also id.* § 841.002(8) (defining "sexually violent offense").

A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id.* § 841.003(b).

A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

In these cases we use the criminal test for legal sufficiency. *In re Commitment of Brown*, No. 05-16-01178-CV, 2018 WL 947904, at *8 (Tex. App.—Dallas Feb. 20, 2018, no pet.) (mem. op.). Thus, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the required elements beyond a reasonable doubt. *Id.* It is the factfinder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences for basic to ultimate facts. *Id.*

Although factual sufficiency has been abandoned in criminal cases, as an intermediate appellate court with final authority over factual sufficiency challenges in civil cases, we will perform a factual sufficiency review in Chapter 841 cases when the issue is raised on appeal. *Id.* In our factual sufficiency review, we consider whether the verdict, though supported by legally sufficient evidence, nevertheless reflects a risk of injustice that compels a new trial. *Id.* We view all the evidence in a neutral light and determine whether the jury was rationally justified in finding the required elements beyond a reasonable doubt. *Id.* We reverse only if the risk of an injustice is too great to allow the verdict to stand. *Id.*

The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id*. at *9. The jury may resolve conflicts in the evidence and believe all, part, or none of any witness's testimony. *Id*. We may not substitute our judgment for the jury's. *Id*.

### 3. Applying the Law to the Facts

To find that Johnson was a "sexually violent predator," the charge instructions required the jury to find that he (i) is a repeat sexually violent offender and (ii) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Conceding the first element, Johnson's first two issues argue only that the evidence is legally and factually insufficient to support the second element.

### a. Johnson's Preliminary Legal Arguments

Johnson argues that the word "likely" in the second element of sexually violent predator status means "more likely than not" and that the evidence is insufficient to meet that standard. He notes that State's expert Price defined "likely" as "beyond a mere possibility," and he argues that Price's testimony is legally insufficient to support the verdict if "likely" means more than "beyond a mere possibility." However, in *Brown* we rejected Johnson's proposed interpretation: "[U]se of the term 'likely' in the Act does not require evidence of a specific percentage of risk, and the term should not be interpreted to mean 'more likely than not.'" 2018 WL 947904, at *9. Rather, the expert's personal definition of "likely" goes to the weight the jury decides to give the expert's testimony. *See id*. (citing *In re Commitment of Riojas*, No. 04-17-00082-CV, 2017 WL 4938818, at *4 (Tex. App.—San Antonio Nov. 1, 2017, no pet.) (mem. op.)). So we reject Johnson's statutory interpretation argument.

Relying on legislative history and the statement of legislative findings in § 841.001, Johnson also argues that a person cannot be adjudicated a sexually violent predator unless he is "extremely dangerous" and one of the "worst of the worst." But these terms do not appear in the

statutory "sexually violent predator" definition.  Thus, they are not elements the State had to prove.  *See Esparza v. Nolan Wells Commc'ns, Inc.*, 653 S.W.2d 532, 535 (Tex. App.—Austin 1983, no writ) (courts may not engraft additional elements onto statutory causes of action); *see also Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728 (Tex. App.—Dallas 2016, pet. denied) (courts may not amend statues by adding words to them).

### b.   The Evidence

Next, we review the evidence concerning whether Johnson has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.  *See* HEALTH & SAFETY § 841.003(a)(2); *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012) (this element constitutes "a single, unified issue").

### (1)   Price's Testimony

Price holds a Ph.D. in psychology and has been a Texas licensed psychologist since 1983.  He is board certified in forensic psychology, which he described as applying psychological knowledge to legal matters.

When Price evaluates someone like Johnson in a Chapter 841 proceeding, he reviews all available records—prison records, police reports, victim statements, medical records, sex offender treatment records, and school and employment records if available.  He also interviews the person face to face.  He then uses the information to complete two assessments: the Static 99-R and the Psychopathy Checklist Revised (PCLR).  The Static 99-R compares the person to data based on thousands of other offenders and furnishes an objective baseline probability that the person will re-offend.  The PCLR rates the person on twenty traits and behaviors, and the resulting score indicates whether the person is a psychopath or has some psychopathic traits.  Finally, Price combines those two assessments with his own clinical evaluation to form his ultimate opinion.  He testified that this methodology is considered the best practice in the field.

–6–

Johnson's score on the Static 99-R was a five. According to Price, 15.2% of the sex offenders who scored a five were convicted of re-offending within five years of release. Considering the margin of error, Price said that the actual range was 13.8% to 16.6%. This is an above average risk of re-offending. Johnson's score on the PCLR was a twenty-two, which was in the moderate range for male prison inmates. This score meant that Johnson has some psychopathic traits but is not a psychopath.

Applying his expertise to Johnson's case, Price concluded that Johnson has a pedophilia disorder, an anti-social personality disorder, and a stimulant use disorder. He identified the pedophilia disorder and the anti-social personality disorder as being the main bases of his conclusion that Johnson has a behavioral abnormality.

Price also discussed and applied the "risk factors" that make a sex offender more likely to re-offend and the "protective factors" that make a sex offender less likely to re-offend.

The two biggest risk factors are (i) sexual deviance, meaning that a person becomes sexually aroused by things that society views as abnormal and acts on that arousal and (ii) anti-social personality. Johnson has sexual deviance, given his multiple convictions for sexual offenses against minors and his admissions that he finds female children attractive and has urges and fantasies about them. Moreover, the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, states that pedophilia is a lifelong condition.

Price also testified that Johnson has anti-social personality disorder, which encompasses a number of traits: a history of breaking rules and laws, impulsiveness, reckless disregard for others' safety, lack of remorse, and deceitfulness. The criteria for that disorder require it to manifest before age fifteen, which it did in Johnson's case. Thus, the two biggest risk factors for re-offending apply to Johnson.

It is also a risk factor when a person starts committing sex offenses at a young age. Johnson has this risk factor, given that he sexually assaulted a six-year-old girl when he was fourteen.

Price testified that some studies show that denial of one's offenses is a risk factor but others suggest that it is not much of a risk factor. Here, Johnson does not deny his offenses, and Price acknowledged that "he's really made a good start, especially when it comes to the—the denial issue." Johnson argues that the State should be "judicially estopped" from downplaying denial as a risk factor based on the State's contrary position in other cases. But he did not object to Price's testimony about whether denial is a risk factor, so he cannot complain about it now. *See generally* TEX. R. APP. P. 33.1(a)(1).

Johnson testified that he was himself sexually abused as a child. Price testified that this was a risk factor, though not nearly as important as other factors.

Johnson was married for a time, and Price testified that living with another person in an intimate setting for two years is a protective factor. But Johnson also testified that he still had sex with "random women" while he was married, which Price said was "something else to consider." Thus, the jury could discount the strength of this protective factor.

Johnson is a sexual recidivist, meaning that he repeatedly re-offended even after being sanctioned for it in the past. Price testified that this is a risk factor.

On one occasion, Johnson molested two young girls even though other children were also present. According to Price, committing a sex crime where others might observe it is a risk factor.

Johnson's crimes tended to be more impulsive than planned. This is a risk factor because it means that he might commit a new offense any time if the opportunity presents itself. People have less control of impulsive acts, and they have less time to make a conscious decision. Price testified, "Impulsive behavior is harder to change than deliberate behavior."

Successful completion of a sex offender treatment program is a protective factor that can reduce the risk of re-offending by 7–10%. At the time of trial, Johnson had started but not yet completed a nine-month sex offender treatment program. Price testified that he has never seen a case in which a nine-month program was enough to manage a pedophilia disorder. Successfully completing treatment typically takes years, not months. Price acknowledged that Johnson had made a good start, but pedophilia involves lifelong tendencies, and what Johnson had done so far was not enough. Although Johnson testified that he intended to seek treatment after his release and that he would like to stay in therapy the rest of his life, the jury was entitled to judge his credibility and was not required to believe him.

Generally, the male sex drive declines with age, and male criminals become less likely to re-offend as they get older. However, Price testified that the decline in sex drive is much weaker in persons with pedophilia disorder. This supports the premise that Johnson's increasing age is not as strong a protective factor as it would be for other sex offenders.

Near the end of his direct examination, Price was asked whether Johnson suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. He answered, "Yes."

On cross-examination, Price testified that he did not think there was any way that someone in his field could consider other risk factors not included in the Static 99-R, quantify and add them up, and say that they "would bring it up to a higher level of risk." He also said that he "would not think" that the majority of pedophiles over age fifty-five re-offend, but he didn't know the data.

### (2)    Johnson's Testimony

Johnson testified that while he was in prison he made up his mind to change and reform and therapy is helping him accomplish those goals. He said that he has been given the tools or

weapons not to re-offend and he is not the same person he was in 1994. He also said that he feels very remorseful and sorry.

But he also testified inconsistently that he is and is not sexually attracted to little girls. He further testified that he has no concern at all that he will re-offend. And he said, "I would be a fool after going through therapy and be alone with little kids. That's what we call trigger points, that's what we call relapse." He also said, "I would never put myself in a predicament of being alone with a child." He further testified that therapy taught him how to stop fantasizing about sex with a child and "how to stop that trigger point."

Johnson acknowledged that his therapist once asked him if he thought he was a risk to re-offend, and he told her that he "wasn't for sure" and he "was afraid." But at trial he was confident that he is "not going to fail."

Johnson also acknowledged that in a deposition seven weeks before trial he told the State's attorney that he was concerned about re-offending, but at trial he said that he is not at risk to re-offend. Similarly, he previously told the State's attorney that he thought he was a pedophile, but at the time of trial he did not consider himself a pedophile. And when he was asked at his deposition if he was concerned about relapsing, he said, "Not totally, but I wouldn't sit here and tell you, hey, I got it beat."

Moreover, Johnson testified that he couldn't control himself (i) when in 1975 he assaulted a six-year old girl and (ii) when in 1973 he assaulted his wife's two relatives. He also testified regarding his final crime that he found his neighbor's eight- or nine-year-old daughter attractive and fantasized about having sex with her before her sexually assaulted her.

### c.     Conclusion:  The evidence is legally and factually sufficient.

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could reasonably find beyond a reasonable doubt that Johnson has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

The jury was entitled to disbelieve Johnson's testimony that he had reformed and that he was not going to re-offend once he was released.  The evidence showed that shortly before trial Johnson himself expressed doubts to his therapist and in a deposition as to whether he would re-offend.  In assessing Johnson's credibility, the jury was also free to consider the nature and number of Johnson's prior offenses and his trial testimony concerning his feelings when he committed those offenses.

And Price testified that (i) the Static 99-R showed that Johnson was more likely to re-offend than the average sex offender and (ii) Johnson had many risk factors that increased the likelihood that he would re-offend.  These risk factors included his pedophilia disorder, his anti-social disorder, the early age of his first offense, the fact that Johnson himself was sexually abused as a child, Johnson's sexual recidivism, his willingness to commit offenses in front of other children, the impulsive nature of his offenses, and the fact that a male pedophile's sex drive does not diminish with age as much as the sex drive of other offenders.

Moreover, Price generally discounted the few protective factors in Johnson's favor.  Although Johnson maintained an intimate relationship for some time, he was frequently unfaithful in that relationship.  And although Johnson had made a good start in a nine-month therapy program, Price said that (i) successfully completing treatment usually takes years, not months and (ii) Johnson needs a lot more treatment at this point.  Thus, the jury's finding against Johnson was reasonable.

–11–

We also conclude that the evidence is not so weak as to reflect such a risk of injustice as to compel a new trial. *See In re Commitment of Brown*, 2018 WL 947904, at *8. Thus, the evidence is also factually sufficient to support the jury's finding.

We overrule Johnson's first two issues.

**B.      Issue Three:  Did the trial court abuse its discretion by overruling Johnson's objection to Price's testimony that another expert previously determined that Johnson suffered from a behavioral abnormality?**

Johnson's third issue argues that the trial court harmfully erred by admitting hearsay testimony from Price that another expert, Dr. Turner, had determined that Johnson suffered from a behavioral abnormality. We disagree, concluding that the trial court did not abuse its discretion and, in the alternative, any error was harmless.[1]

Our standard of review is abuse of discretion. *In re Commitment of Sawyer*, No. 05-17-00516-CV, 2018 WL 3372924, at *5 (Tex. App.—Dallas July 11, 2018, pet. denied) (mem. op.).

Price testified that, as is customary in Chapter 841 cases, another psychologist (Turner) evaluated Johnson before Price did. Turner generated a report that Price saw. When the State asked Price what Turner's ultimate diagnosis was, Johnson objected, and the trial court suggested that the State "lay that foundation" and overruled the objection. Shortly thereafter, the State asked Price whether Turner determined that Johnson suffered from a behavioral abnormality, and Price answered, "Yes." Soon after that, Price explained how he used Turner's report:

> I used the information that Dr. Turner reported, he gathered, and compared it to the information that I gathered for consistency. I didn't use the fact that what he diagnosed him as as a guide for what I was to diagnose as, but I did use the information that he gathered and wrote in his report to look for consistency and for things to inquire about when I did my evaluation.

---

[1] The State argues that Johnson failed to preserve error because his appellate argument does not comport with his trial objection. We assume without deciding that error was preserved.

Johnson argues on appeal that Price's testimony that Turner determined Johnson had a behavioral abnormality was hearsay. This is correct to the extent the testimony was offered to prove that Johnson in fact had a behavioral abnormality. *See* TEX. R. EVID. 801(d). But the trial court has discretion to admit otherwise inadmissible facts or data underlying an expert's opinion under proper circumstances. TEX. R. EVID. 705(d).

We have twice held that the trial court did not abuse its discretion by admitting similar evidence under Rule 705(d) under similar circumstances. *See In re Commitment of Barnes*, No. 05-17-00939-CV, 2018 WL 3490890, at *2–3 (Tex. App.—Dallas July 20, 2018, pet. denied) (mem. op.) (situation involved Price's testimony about Turner's opinion, just as in this case); *In re Commitment of Sawyer*, 2018 WL 3372924, at *5–6.

As in those cases, the trial court here instructed the jury that the "hearsay was admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted."

Accordingly, we follow *Barnes* and *Sawyer* and hold that the trial court did not abuse its discretion by admitting the evidence.

Alternatively, if the trial court erred, the error was harmless. Johnson argues that the evidence probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). A successful challenge to an evidentiary ruling usually requires the complaining party to show that the judgment turns on the particular evidence admitted or excluded. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995). "In determining whether the erroneous admission of evidence probably led to an improper judgment, courts look to the role the evidence played in the context of the trial and the efforts made by counsel to emphasize the erroneous evidence, as well as whether contrary evidence existed that the improperly admitted evidence was calculated to overcome." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012).

The State did not emphasize the hearsay, which weighs against a finding of harm. Price testified at length about his own opinions about Johnson but only briefly about Turner's opinion. During closing argument, the State discussed Price's testimony at length but referred only once to the fact that two doctors (and a therapist) said that Johnson is a pedophile. Given the State's minimal emphasis on Turner's hearsay statement that Johnson has a behavioral abnormality, we think it probably did not affect the outcome.

Additionally, an erroneous evidentiary ruling is likely harmless if the rest of the evidence was so one-sided that the error likely made no difference. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). Here, the hearsay Johnson complains of addressed whether he had a behavioral abnormality. The evidence of this fact was overwhelming, starting with his seven admitted sex offenses against female minors. The hearsay likely made no difference to the jury on this issue.

Finally, the error was harmless because the hearsay was somewhat cumulative of other evidence admitted without objection. Price testified about the screening process for sex offender inmates who are close to being released. He said that such an inmate is first considered by a committee of prison employees. If the committee concludes that he has a behavior abnormality, he is then screened by a psychologist (Turner, in this case). If the psychologist determines that the inmate has a behavioral abnormality, the case typically goes to a second psychologist (Price, in this case). This testimony informed the jury that a psychologist other than Price had previously determined that Johnson has a behavioral abnormality. Price's testimony merely identified that psychologist as Turner. For this reason as well, Price's testimony was probably harmless. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) (erroneously admitted evidence is harmless if it is merely cumulative).

We overrule Johnson's third issue.

–14–

**C.    Issue Four:  Did the trial court err by overruling Johnson's objection to an allegedly impermissible burden-shifting comment during the State's closing argument?**

Johnson's last issue complains that the State made a closing argument that improperly shifted the burden of proof.  We review the trial court's ruling on an objection to closing argument for abuse of discretion.  *See Wal-Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 675 (Tex. App.—Dallas 2018, pet. granted, aff'd as modified w.r.m.) ("Control over counsel during closing argument is within the sound discretion of the trial court and will not be disturbed on appeal without a clear showing of abuse of that discretion.").  On this record, we find no abuse.

Johnson complains about the part of the State's rebuttal argument emphasized in the following quotation:

> The burden of proof is on the State.  It never shifts.  The Defense—the Respondent doesn't have to do a thing.  We filed the lawsuit, we have to prove it beyond a reasonable doubt.  Guess what?  It is the highest burden, but it's also the same burden for a traffic ticket.  So don't get worried about beyond a reasonable doubt. It's met every single day in this courthouse.  We have the burden, we bring the evidence.
>
> *Don't you know that if there was someone in this world that believed Mr. Johnson did not suffer from this behavioral abnormality, you would have heard from them.*

> DEFENSE COUNSEL:        Objection, burden shifting.

> THE COURT:            Overruled.

(Emphasis added.)

The relevant rule of procedure states, "Counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel."  Tex. R. Civ. P. 269(e). Counsel, however, must be given great latitude to argue the facts and the issues.  *Ramirez v. Acker*, 138 S.W.2d 1054, 1055 (Tex. 1940); *Sanchez v. Espinoza*, 60 S.W.3d 392, 395 (Tex. App.— Amarillo 2001, pet. denied).

We disagree that the State's argument misplaced the burden of proof.  "Jury argument pointing out that the defendant has failed to present evidence in his favor does not shift the burden

of proof but instead summarizes the state of the evidence and is a reasonable deduction from the evidence." *Thomas v. State*, No. 05-14-01589-CR, 2016 WL 259761, at *7 (Tex. App.—Dallas Jan. 21, 2016, pet. ref'd) (mem. op., not designated for publication).

Furthermore, immediately before making the complained about argument, the State acknowledged that it bore the burden of proof beyond a reasonable doubt. The comment Johnson assails did not mention the burden of proof at all. The State's argument did not misstate the law regarding the burden of proof, and the trial court did not abuse its discretion by overruling Johnson's objection.

Johnson also argues that it was improper for the State to point out Johnson's failure to call a witness on the behavioral abnormality question absent evidence that a witness favorable to the defense actually existed. However, "[c]omplaints and arguments on appeal must correspond with the complaint made at the trial court level." *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.). Thus, this argument was not preserved.

Alternatively, even had Johnson preserved this argument, we conclude that the argument was not improper on this basis. The argument was a proper summary of the state of the evidence regardless of whether any defense favorable witnesses actually existed. *See Thomas*, 2016 WL 259761, at *7. Moreover, our sister court in Beaumont has held that a comment that the defendant failed to call any experts to contradict the State's expert is proper under Rule 269(e). *In re Commitment of Ybarra*, No. 09-14-00394-CV, 2016 WL 637728, at *2 (Tex. App.—Beaumont Feb. 18, 2016, no pet.) (mem. op.). We conclude that the State's argument was a proper argument about the evidence within the meaning of Rule 269(e).

We overrule Johnson's fourth issue.

### III. DISPOSITION

We affirm the trial court's judgment.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


171171F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE THE COMMITMENT OF
DONALD RAY JOHNSON

No. 05-17-01171-CV

On Appeal from the 203rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. CV-16-70007.
Opinion delivered by Justice Whitehill.
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 30th day of January 2019.